2076

Bruce C. HANSEL, Conservator and Guardian for Kathryne Hansel, Respondent v. NATIONAL STATES INSURANCE COMPANY, Appellant.

(437 S.E. (2d) 159)

Court of Appeals

---

[7] Because oral argument would not aid the Court in resolving the issues, we decided this case without oral argument.

*David L. Moore, Jr.,* of *Love, Thornton, Arnold & Thomason,* and *Dana C. Mitchell, III,* of *Mitchell, Bouton, Yokel, Edwards & McCall,* Greenville, *for appellant.*

*Gregory A. Morton,* of *Donnan, Morton & Davis,* Greenville, *for appellant.*

Heard Sept. 8, 1993

Decided Oct. 4, 1993. Reh. Nov. 10, 1993.

GOOLSBY, Justice:

Bruce C. Hansel, as conservator and guardian for Kathryne Hansel, brought this action against National States Insurance Company alleging causes of action for breach of contract and for bad-faith refusal to pay insurance benefits. The jury found in Mrs. Hansel's favor on both causes of action and awarded her actual and punitive damages. National States appeals. The issues on appeal relate to the sufficiency of the evidence to support the verdict and to the sufficiency of the trial judge's review of the punitive damages award. We affirm.

## FACTS

Mrs. Hansel, a widow who lived alone, purchased a nursing home policy from National States on June 28, 1988. The policy

provided her coverage for skilled and intermediate nursing care but not for custodial care. It defined the terms "skilled nursing care," "intermediate nursing care," and "custodial care" as follows:

> "Skilled Nursing Care" means nursing care which: (a) is furnished on a doctor's orders . . . ; (b) requires the skills of professional personnel such as a registered or licensed practical nurse . . .; [and] (c) is provided either directly by or under the supervision of these professional personnel.
> "Intermediate Nursing Care" means basic care including physical, emotional, social, and other restorative services under periodic medical supervision. This nursing care requires the skill of the registered nurse in administration, including observation and recording of reactions and symptoms, and supervision of nursing care.
> "Custodial Care" means care which: (a) is primarily for the purpose of meeting personal needs such as eating, bathing, dressing, walking, getting in and out of bed, taking medication of a type which is usually self-administered: (b) could be performed by a person without professional nursing skills or training.

Almost a year after receiving her policy, Mrs. Hansel fell on her front porch. Her face struck the door frame. She lay on her porch unconscious for several hours before someone found her. Mrs. Hansel, who was 77 years old at the time, was immediately taken by ambulance to a special trauma unit at the University of Louisville Hospital and later to the Suburban Humana Hospital. Her injuries included a laceration near her eye, some bruises, and a serious fracture to her shoulder.

Mrs. Hansell remained hospitalized for five days before being transferred directly to the Christopher East Health Care Facility. An ambulance took her from the hospital to Christopher East. Her orthopedic surgeon's 'admitting orders' to Christopher East indicated Mrs. Hansel should be placed in the facility's skilled care section. In his deposition, the orthopedic surgeon explained:

> The [s]killed [n]ursing would be the top level [of care] which requires a lot of nursing functions of going back and checking on the patient, checking their [sic] circula-

tion, for instance, in this case, to make sure that she still has good circulation, probably giving her medications that she may need throughout the day, for instance, for pain or for any other problem, assisting her with getting in and out of bed if she is somewhat of an invalid or requires help.

She remained in the skilled care section until she was discharged on July 21, 1989.

In her deposition, Mrs. Hansel's daughter, Irene Wood, stated her mother's fluids, vital signs, and circulation were checked frequently while she was in Christopher East. As her mother's condition improved, the nurses helped Mrs. Hansel walk by using a gait belt. The nurses also helped Mrs. Hansel perform range of motion exercises to maintain full use of her arms and legs. Mrs Hansel also received whirlpool baths and eventually improved enough to undergo physical therapy.

Mrs. Wood submitted a claim on her mother's behalf in July 1989. National States denied the claim on two occasions. On November 8, 1989, National States informed Mrs. Hansel it was denying her claim based on its evaluation that the care she received at Christopher East was custodial rather than skilled or intermediate. On April 24, 1990, National States stated it was not liable for the physical therapy Mrs. Hansel received while at Christopher East because the therapy did not start until 41 days after she was discharged from the hospital. National States explained Mrs. Hansel's physical therapy was not covered by the policy because it did not start within 30 days of discharge form the hospital.

This action followed.

### ISSUES[1]
National States contends the trial judge erred:

(1) In denying its motions for directed verdict, judgment notwithstanding the verdict, and new trial on the action for bad-faith refusal to pay insurance benefits.

(2) In limited its posttrial review of the punitive damages award to a determination of whether the award was unduly excessive.

[1] National States does not appeal the trial court's determination that South Carolina law governs.

(3) In applying the factors that are to be considered in reviewing a punitive damages award.

## I. DIRECTED VERDICT AND POSTTRIAL MOTION

National States argues the evidence only supports a finding that it had reasonable grounds to contest Mrs. Hansel's claim and therefore the trial court should have granted its directed verdict motion or its posttrial motions. *See Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 158, 345 S.E. (2d) 711, 713-14 (1986) (wherein the supreme court approved a jury charge that "(1) 'the [p]laintiff must prove that there was no reasonable basis to support the decision of the insurance company to deny certain insurance benefits . . .' and (2) that '[i]f there is any reasonable ground for contesting the claim, there is no bad faith and such is a matter depending upon circumstances existing when liability is declined. . . .' ").

As in *Varnadore*, a review of the record discloses competent evidence to support a jury finding of bad faith.[2]

---

[2] The evidence supporting a finding that National States had no reasonable basis for denying Mrs. Hansel's claim includes the following:

1. National States waited four months to respond to Mrs. Hansel's claim.
2. National States never contacted Irene Hansel who filed the claim for her mother with National States and who was intimately familiar with the care provided her mother.
3. National States failed to return at least fifteen telephone calls made by Irene Hansel to National States after National States first denied Mrs. Hansel's claim on November 8, 1989.
4. National States failed to provide Bruce Hansel, Mrs. Hansel's son, with copies of his mother's medical records after he requested them in writing and offered to pay for the photocopying charges.
5. When it denied Mrs. Hansel's claim the first time, National States gave as an explanation that coverage was only afforded when a nursing home stay was necessitated by the same accident or injury that prompted hospitalization and that Mrs. Hansel never received skilled or intermediate nursing care.
6. When National States denied Mrs. Hansel's claim the second time on April 24, 1990, it claimed Mrs. Hansel did not receive skilled or intermediate care within 30 days of being discharged from the hospital, as required by the policy, because Mrs. Hansel did not begin receiving physical therapy until day 41 of her stay at Christopher East.
7. National States' adjustors used no claims manual or guidelines to process claims.
8. No personnel with medical training assisted the adjustors in reviewing medical records.
9. National States has no claim review committee.
10. Upon discharge from the hospital, the discharging physician indicated

## II. POSTTRIAL REVIEW OF
## PUNITIVE DAMAGES AWARD

■ National States complains of the trial judge's posttrial review of the punitive damages award required by the supreme court's decision in *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E. (2d) 350 (1991). National States argues the trial judge erred in limiting its posttrial review to a determination of whether the award was unduly excessive and asserts the due process clause requires a determination by the trial judge of whether the award "rationally should have been made." This argument is not properly before us because it was never presented to and ruled on by the trial judge. *Tri-County Ice & Fuel Co. v. Palmetto Ice Co.*, 303 S.C. 237, 399 S.E. (2d) 779 (1990).

■ In any case, the trial judge properly conducted the posttrial review required by *Gamble*. He addressed each of the seven factors that the supreme court said in *Gamble* a trial judge may consider in conducting a posttrial review of a punitive damages award. *See Gamble*, 305 S.C. at 111-12, 406 S.E. (2d) at 354. Following his review, the trial

---

Mrs. Hansel needed to go to a skilled nursing center.

11. Upon arrival at the nursing home, a physician indicated Mrs. Hansel's level of care was "skilled."

12. The nurse who conducted the pre-admission review indicated intermediate or skilled care was required.

13. Another nurse indicated Mrs. Hansel's special nursing needs included "positioning" and "passive range of motion" exercises.

14. A letter dated June 16, 1989, and written by a nurse at Christopher East acknowledges Mrs. Hansel received "skilled care" and was cared for in the "Skilled Care Wing."

15. A letter dated December 14 1989, and written by a physician states Mrs. Hansel "required both skilled health care and physical therapy to recover."

16. National States possessed no record from any doctor or nurse stating that Mrs. Hansel required only "custodial" care.

17. Mrs. Hansel's medical records show she received substantial professional nursing care during her first thirty days at Christopher East.

18. Mrs. Hansel suffered serious injuries.

19. The nurses continuously monitored and recorded Mrs. Hansel's vital signs, monitored sling placement, checked her arm for circulation problems, measured and recorded bodily fluid intake and output, gave her special baths, checked the head wound for infection and removed her stitches.

20. Mrs. Hansel received nursing care pursuant to doctor's orders, the nursing care provided required the skill and training of professional personnel, and trained professionals provided the nursing care.

judge determined the punitive damages award not to be " 'grossly disproportionate to the severity of the offense.' "

### III. APPLICATION OF FACTORS

National States also argues the trial judge erred in making concusory findings based on the *Gamble* factors in his written order disposing of National States' motion for reconsideration under Rule 59(e), SCRCP. National States contends due process requires a trial judge to "do more tha[n] set forth short, cursory [and] conclusory findings concerning the factors to be reviewed, with reasoning that is result-oriented" in conducting a posttrial review of a punitive damage award.

The findings of the trial judge reflect consideration of each of the *Gamble* factors in light of the particular circumstances of this case. The trial judge's brevity in stating his findings does not invalidate his review or his conclusion that the punitive damage award was proportionate to National States' conduct. We conclude the review conducted in this case fulfills the requirements of *Gamble. See Kinard v. Crosby*, 433 S.E. (2d) 835 (1993) (wherein the supreme court upheld an award of punitive damages despite the assertion that no posttrial review was held as required by *Gamble* where the record indicated the trial court reviewed both the actual and punitive awards and found them to be "well within reasonable limits").

Affirmed.

HOWELL, C.J., and CURETON, J., concur.