24372

COCK-N-BULL STEAK HOUSE, INC., Respondent v. GENERALI IN-
SURANCE COMPANY, a/k/a Generali—U.S. Branch, Generali Under-
writers, Inc., Appellant.

(466 S.E. (2d) 727)

Supreme Court

2

*T. Travis Medlock* and *Michael S. Pauley*, both of *Lide, Montgomery, Potts & Medlock*, Columbia; *Rudolph V. Pino, Jr.* and *John F. McKay, III*, of *Pino & Associates*, White Plains, NY, *for appellant.*

*Kenneth M. Suggs*, of *Suggs & Kelly*, Columbia; *A.F. Carter, III*, of *The Carter Law Firm*, Orangeburg, *for respondent.*

Heard Oct. 5, 1995.

Decided Jan. 22, 1996.

Toal, Acting Chief Justice:

In this action against an insurance company, the insured asserts claims of breach of contract and bad-faith failure to pay insurance claim. The insurance Company appeals the trial court's directed verdict on these two claims and the jury's award of punitive damages in favor of the insured. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Cock-N-Bull Steak Home, Inc. ("Cock-N-Bull") was the owner of an Orangeburg, South Carolina restaurant which was destroyed by fire in May 1991. After the fire, Cock-N-Bull attempted to collect on its insurance policy with the Generali Insurance Company ("Generali"). The policy provided "Building" coverage of $500,000 and "Contents" coverage of $150,000. Cock-N-Bull claimed under the "Building" coverage separate losses of $275,000 and approximately $56,000. In addition, it claimed a loss of $150,000 under the "Contents" coverage. In January 1992, Generali paid Cock-N-Bull the $150,000 claim. Two months later, it paid the $275,000 claim with a check indicating "Full & Final Settlement of Entire Claim." Generali rejected the $56,000 "Building" claim because it contended that the claim exceeded the coverage limits for "Contents."

After Generali failed to respond to further requests by Cock-N-Bull to consider its claim, Cock-N-Bull brought this action asserting breach of contract and bad-faith refusal to pay insurance claim. The judge directed a verdict for Cock-N-Bull as to both claims and awarded actual damages of approximately $52,000. The issue of punitive damages was submitted to the jury, which awarded Cock-N-Bull $1,500,000. Generali has appealed alleging numerous errors by the trial court.

## LAW/ANALYSIS

### A. Directed Verdict

Generali argues that the trial court erred in directing a verdict for Cock-N-Bull on the breach of contract and bad-faith failure to pay claims. We disagree.

When viewed in the light most favorable to Generali, the evidence does not yield more than one inference; thus, a directed verdict was proper. *See Strange v. South Carolina Dep't Highways & Pub. Transp.,* — S.C. —, 445 S.E. (2d) 439 (1994). The insurance policy's language explicitly states what items fall within coverage. Although the Declarations section of the policy sets forth the coverage amounts by using the shorthand terms "Building" and "Contents," the portion of the policy defining coverage describes "Covered Property" in terms of two categories, "Building" and "Business Personal Property":

Covered Property, as used in this Coverage Part means the following types of property for which a Limit of Insurance is shown in the Declarations:

a. Building, meaning the building or structure described in the Declarations, including:

    (1) Completed additions;

    (2) Permanently installed:

        (a) Fixtures;

        (b) Machinery; and

        (c) Equipment;

    (3) Outdoor fixtures;

    (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

        (a) Fire extinguishing equipment;

        (b) Outdoor furniture;

        (c) Floor coverings; and

        (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

\* \* \* \* \* \*

b. Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property—Separation of Coverage form:

    (1) Furniture and fixtures;

    (2) Machinery and equipment;

    (3) "Stock";

    (4) All other personal property owned by you and used in your business;

\* \* \* \* \* \*

A comparison of the categories "Building" and "Business Personal Property" reveals that they are not mutually exclusive. Certain fixtures, machinery, and equipment fall within the definitions of both.

Cock-N-Bull's $56,000 claim, in addition to meeting the definition of "Business Personal Property," clearly fell under the definition of "Building" as Cock-N-Bull was claiming items such as fixtures, machinery, and equipment. Generali took the

position, however, that such items constituted "Contents," not "Building." Generali attempted, in effect, to avoid payment by limiting the policy to the shorthand descriptions of "Building" and "Contents" used in the Declarations, while ignoring the detailed language of the contract which set forth the scope of the coverage. This is a clear breach of the contract. The evidence, when viewed in the light most favorable to Generali, does not yield more than one inference; accordingly, a directed verdict was proper. *See Strange*, 314 S.C. 427, 445 S.E. (2d) 439.

Generali's attempt to evade payment not only constituted breach of contract, but was also in bad faith. The elements of an action for bad-faith refusal to pay benefits under an insurance contract include: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359-60, 415 S.E. (2d) 393, 396-97 (1992). "An insured may recover damages for a bad-faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Dowling v. Home Buyers Warranty Corp.*, 303 S.C. 295, 297, 400 S.E. (2d) 143, 144 (1991) (citing *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 345 S.E. (2d) 711 (1986); *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 306 S.E. (2d) 616 (1983)). In the present case, there clearly existed a mutually binding contract under which the insurer refused to pay benefits. This refusal resulted from the insurer's bad faith and caused damage to the insured.

At trial Generali did not present evidence as to why the claim was denied. In fact, two of Generali's *own witnesses* testified to the unreasonableness of Generali's position. Joe Eudy, who had conducted an appraisal for Generali, admitted that Generali owed the insured more money and that Generali had improperly excluded certain items from coverage:

> Q: There's absolutely no question that this insurance company, Generali, owes more money on this claim right now; isn't that true?

A: In my opinion, they do.

Q: There's no way that a Delfield Double Refrigerator is not an appliance that's used for refrigeration; isn't that true?

A: That's correct.

The second of Generali's witnesses, Richard Domato, also testified about the impropriety of Generali's position:

Q: Sir, do you have any reason to believe the five fire extinguishers are not fire extinguishing equipment?

A: No, I have no reason to believe that.

Q: Do you have any reason to believe that the Delfield Single Refrigerator is not a piece of appliance used for refrigeration?

A: No.

Q: Can you give this jury one single reason that this kind of stuff should not have been paid under the language you just read?

A: Not being an expert in property, no; but I cannot give a reason it should not have been paid.

These statements by Generali's own witnesses provide clear evidence of the unreasonableness of Generali's refusal to pay Cock-N-Bull's claim.

Generali argues that the record demonstrates a number of indicia of "good faith." However, under the bad-faith denial standard discussed in *Crossley* and *Dowling*, we need only determine whether there existed a reasonable basis for the denial. Because there was no reasonable basis to support Generali's denial of benefits, the trial court was correct in directing a verdict in favor of Cock-N-Bull on its bad-faith denial claim.

### B. Testimony of Baldwin

Generali claims that the trial court erred in allowing Cock-N-Bull's appraiser to testify on the issues of breach of contract and of bad faith. We disagree.

The only issue preserved by Generali is that Baldwin testified that the "insurance company handled the claim [not] very well." Generali asserts that this statement constituted a legal concusion, one which violates Rule 43(m), SCRCP. This statement is an opinion on how well Generali handled the claim; it

does not constitute a legal conclusion. *See Shields v. South Carolina Dep't Highways & Pub. Transp.*, 303 S.C. 439, 401 S.E. (2d) 185 (Ct. App.), *cert. denied* (1991) (expert witness's statement that Highway Department's placement of signs "border[ed] on criminal negligence" was not a comment on the law).

### C. Testimony of Dr. Wood

Generali alleges that the trial court erred in admitting the testimony of Dr. Oliver Wood, Jr., regarding the amount of punitive damages that would "get the attention of Generali." It argues that Dr. Wood was not qualified because he never served on the board of an insurance company and that his testimony invaded the province of the jury. Qualification of an expert witness and the admissibility of his testimony are matters within the trial court's discretion. *Lee v. Suess*, 318 S.C. 283, 457 S.E. (2d) 344 (1995). " '[D]efects in the amount and quality of education or experience go to the weight of the expert's testimony and not its admissibility.' " *McMillan v. Durant*, 312 S.C. 200, 204, 439 S.E. (2d) 829, 831 (1993) (quoting *State v. Schumpert*, 312 S.C. 502, 505 , 435 S.E. (2d) 859, 861 (1993)).

The court did not abuse its discretion in admitting Wood's testimony. For twenty-nine years, Wood has been a professor of banking and finance at the University of South Carolina. He has served on a number of boards of directors and has extensive practical business experience. Therefore, there was ample evidence to find him qualified to testify. Wood testified that corporate directors generally are concerned about seeing increases in their corporations' surplus accounts. If the surplus does not increase, this would "get their attention immediately." Generali's surplus, he indicated, increased $5.3 million last year. He did not tell the jury how much they should award in punitive damages. We do not find that the trial court abused its discretion in admitting this testimony; nor did Dr. Wood's testimony invade the province of the jury. *See Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 237 S.E. (2d) 753 (1977).

### D. Punitive Damages

Generali argues that the trial court erred in failing to grant its motion for a new trial or a new trial *nisi remittitur* as to punitive damages. We disagree.

It contends that the plaintiff has not proven punitive damages by clear and convincing evidence as required by S.C. Code Ann. § 15-33-135 (Supp. 1994) and that Generali did not act willfully or recklessly because it had a reasonable belief that Cock-N-Bull's additional claim was not covered by the policy. Further, Generali argues that the trial judge did not conduct a proper posttrial review of the punitive damages award as required by *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E. (2d) 350 (1991). It also takes the position that the punitive damages award was unduly liberal, excessive, and motivated by passion, caprice, and prejudice.

A motion for new trial *nisi remittitur* requests the trial court to reduce the verdict because it is merely excessive. *See McCourt v. Abernathy*, 318 S.C. 301, 457 S.E. (2d) 603 (1994). If the amount of the verdict is so grossly excessive as to shock the conscience of the court and to result from caprice, passion, prejudice, partiality, corruption, or some other improper motive, the trial judge should grant a new trial absolute. *Rush v. Blanchard*, 310 S.C. 375, 426 S.E. (2d) 802 (1993). The denial of this motion is within the trial court's discretion, and absent an abuse of discretion, it will not be reversed on appeal. *Id.* We find no abuse of discretion in the present case.

The evidence is clear and convincing that Generali had no reasonable basis for denying the claim and that it acted willfully. At trial it presented no evidence to justify the denial of the claim, and as discussed above, its own witnesses testified to the impropriety of the denial. Generali's second argument, that the judge did not satisfy the *Gamble* requirements, likewise lacks merit. Although the record does not reveal a discussion by the judge of each factor individually, it does establish that he reviewed all the *Gamble* factors. The judge stated on the record that he did not feel that he needed to glean testimony and relate it to each individual factor. His review comports with the standards of *Gamble,* which only require that the trial court conduct a posttrial review and set forth findings on the record. *See Hansel v. National States Ins. Co.*, 313 S.C. 266, 437 S.E. (2d) 159 (Ct. App. 1993) (trial judge's brevity in stating his findings in connection with *Gamble* factors does not invalidate his review or his conclusion of appropriateness of punitive damages award). The trial court

"may consider" the factors listed in *Gamble,* but is not required to do so. *See Gamble,* 305 S.C. at 111-12, 406 S.E. (2d) at 354.

We also find that the punitive damages award, though liberal, was not unduly liberal, excessive, or motivated by passion, caprice, or prejudice.

### E.  Cumulative Effect of Errors

Generali concludes by asserting that the cumulative effect of the trial court's errors requires the granting of a new trial. Because the court did not err as to Generali's previous contentions, an argument for cumulative error must fail.

In addition to arguing about the cumulative effect of the errors, Generali sets forth two other arguments.

First, citing *Toyota of Florence, Inc. v. Lynch,* 314 S.C. 257, 442 S.E. (2d) 611 (1994), it asserts that the trial court placed undue emphasis on the fact that Generali was an Italian corporation. This issue is not preserved. *See Tri-County Ice & Fuel Co. v. Palmetto Ice Co.,* 303 S.C. 237, 399 S.E. (2d) 779 (1990). Even if the issue were preserved, the argument lacks merit. The judge's statement in context was: "Thank you, sir. Now, the defendants in this case are Generali—I think that's Italian—G-E-N-E-R-A-L-I Insurance Company, A/K/A, also known as Generali—U.S. Branch and Generali Underwriters, Inc." The reference to the fact that the corporation was "Italian" was a passing and completely innocuous remark. The remark in the present case in no way compares to the conduct which this Court condemned in *Toyota of Florence,* 314 S.C. 257, 442 S.E. (2d) 611 (reversing the trial court because of attorney's expression, during closing arguments, of ethnic stereotypes through the use of illustrations depicting oriental-looking men and alluding to atomic explosions).

Secondly, Generali argues that the jury was prejudiced because during voir dire one of the prospective jurors stated in front of the entire panel that Generali's attorney had mistreated her sister. The only statements in the record by the prospective juror are that Generali's counsel represented a party against the juror's sister, that counsel questioned the juror's sister, and that she "ha[d] a problem with that." The court asked the juror: "Would that interfere with your ability to—the lawyers aren't on trial." She re-

sponded, "I know, but the things that he asked her and the things that they did." The judge did not allow her to make any additional comments and excused her from the trial. After the comment, Generali mentioned the possibility of calling for a mistrial because of the allegedly prejudicial nature of the prospective juror's remark. The record does not reveal that Generali actually made a motion for a mistrial. The court offered to give a curative instruction in relation to the comment, but Generali declined.

The juror's statement, although uncomplimentary, was not the kind of statement that was so prejudicial as to poison the minds of the entire panel. *See Employers Casualty Co. v. Peterson,* 609 S.W. (2d) 579, 589 (Tex. Civ. App. 1980) (juror's statements during voir dire were not likely to prejudice other members of the panel when he indicated that based on his previous experience with the insurance company, he could not be fair to the company). Furthermore, Generali could have taken advantage of the court's offer to give a curative instruction. Failing to do so, it has waived any complaint about the error. *See State v. Lunsford,* 318 S.C. 241, 456 S.E. (2d) 918 (Ct. App.) (in refusing trial judge's offer of a mistrial and his offer of a curative instruction, defendant waived any complaint he had to the challenged testimony), *cert. denied* (1995); *Boubelik v. Liberty State Bank,* 527 N.W. (2d) 589 (Minn. Ct. App. 1995) (citing *Seidl v. Trollhaugen, Inc.,* 232 N.W. (2d) 236 (Minn. 1975) (declining court's offer to provide curative instruction constituted waiver)); *Janisco v. Kozloski,* 261 Ill. App. (3d) 963, 199 Ill. Dec. 750, 634 N.E. (2d) 1104 (1994) (defendant waived issue when she declined court's offer of a contemporary curative instruction); *Southern Life & Health Ins. Co. v. Smith,* 518 So. (2d) 77 (Ala. 1987) (curative instruction could have offset effect of prejudicial remark made by opposing counsel about insurance company, but the company waived the court's offer to give the instruction). Thus, we find no error.

For the foregoing reasons, the decision of the trial court is AFFIRMED.

MOORE, WALLER and BURNETT, JJ., and MARC H. WESTBROOK, Acting Associate Justice, concur.