UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2367

NANCY K. WACTOR,

                    Plaintiff – Appellant,

          v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,

                    Defendant – Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Anderson.   Timothy M. Cain, District Judge.
(8:11-cv-03167-TMC)

Argued: December 9, 2014          Decided:  March 10, 2015

Before MOTZ and KING, Circuit Judges, and Arenda Wright ALLEN,
United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Gary Walter Poliakoff, POLIAKOFF & ASSOCIATES, P.A.,
Spartanburg, South Carolina, for Appellant.   Charles Franklin
Turner, Jr., WILLSON JONES CARTER & BAXLEY, P.A., Greenville,
South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Wactor (the "Decedent") maintained a life insurance policy (the "policy") with Jackson National Life Insurance Company ("Jackson National") from 1991 until 2010. The policy was cancelled in February 2010 due to a missed premium payment, and the Decedent passed away on June 12, 2010. Plaintiff Nancy Wactor ("Wactor"), the Decedent's wife, is the personal representative of the Decedent's estate and was the sole beneficiary under the policy. In November 2011, Wactor commenced this diversity action in the District of South Carolina, asserting five state law claims through which she sought to enforce the policy and recover benefits. Jackson National moved for summary judgment on each of Wactor's claims, which the district court awarded. See Wactor v. Jackson Nat'l Life Ins. Co., No. 8:11-cv-03167 (D.S.C. July 10, 2013), ECF No. 49 (the "Opinion"). Thereafter, the court denied Wactor's motion for reconsideration of the Opinion. See Wactor v. Jackson Nat'l Life Ins. Co., No. 8:11-cv-03167 (D.S.C. Oct. 8, 2013), ECF No. 55 (the "Reconsideration Order").[1] On appeal, Wactor contests both the Opinion and the Reconsideration Order.

---

[1] The Opinion is found at J.A. 478-88, and the Reconsideration Order is found at J.A. 520-22. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

2

As explained below, we are satisfied to affirm on the reasoning of the district court.

I.

A.

1.

The Decedent maintained life insurance with Jackson National from 1991 until 2010.[2] As of 2010, the policy benefit was $200,000, and premium payments were due quarterly, on January 25, April 25, July 25, and October 25 of each year.[3] As term life insurance, the policy covered the Decedent for the three-month period following his premium payment, meaning that if he died during that period, Jackson National would pay the face value of the policy to Wactor, the named beneficiary.

The policy set forth a series of procedures applicable in the event of a missed premium payment. If a premium was not timely paid, the policy became "in default," commencing a

_____

[2] The facts spelled out herein are drawn from the record and presented in the light most favorable to Wactor, as the nonmoving party in the summary judgment proceedings. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 283 (4th Cir. 2013) (en banc).

[3] During the period in which the policy was in effect, several terms were modified: (1) the schedule of payment changed from semiannual to quarterly; and (2) the face value was decreased from $400,00 to $200,000.

3

thirty-one day grace period. See J.A. 87. During the grace period, the Decedent remained covered and could reinstate the policy by simply paying the overdue premium. If the premium remained unpaid after the grace period, the policy would be cancelled, meaning the Decedent's coverage would lapse. At that point, the policy could be reinstated, within five years of the date the unpaid premium was due, only upon (1) "receipt of evidence of insurability of [the Decedent] satisfactory to [Jackson National]," and (2) "payment of all past due premiums with interest [at a rate of 6 percent, compounded annually] from the due date of each premium." Id. The policy did not contain a notice provision requiring Jackson National to mail or furnish notice prior to cancelling coverage for an unpaid premium.

Meanwhile, Jackson National abides by a privacy policy. In pertinent part, Jackson National collects "nonpublic personal information (financial and health)" about its insureds, and has implemented security practices to protect the confidentiality of that data. See J.A. 143. That information may be disclosed, however, "[t]o the extent permitted by law, . . . to either affiliated or nonaffiliated third parties." Id. The policy specified that, generally, any disclosures to third-parties would be for the purpose of servicing or administering the policy — for example, providing an insured's name and address to

4

a company that would mail newsletters on Jackson National's behalf.

2.

The Decedent was covered by the policy for approximately nineteen years, beginning in March 1991. The Decedent made most of the payments for policy premiums from his own bank account, as he and Wactor generally maintained separate finances. Wactor sometimes paid the policy premiums for the Decedent, however, including ten premium payments since 2006. During his nineteen years under the policy, the Decedent failed to timely pay his premiums on twenty-two occasions. In each instance, Jackson National mailed a grace-period notice to the Decedent, and the Decedent thereafter paid the premium within the grace period.

The Decedent last paid the policy premium that was due October 25, 2009. After the Decedent failed to pay the January 25, 2010 premium, Jackson National's records indicate that it sent two notices via regular mail to the Decedent — a grace-period notice, followed by a lapse notice — although the Decedent did not actually receive either notice. The grace-period notice, sent by letter dated February 4, 2010, stated that Jackson National had not received the January 25, 2010 premium payment; that, as of that date, the policy had entered a grace period; and that the policy "will lapse and all coverage

5

. . . will end on February 25, 2010," absent Jackson National's receipt of the premium payment by that date. See J.A. 80.

The Decedent did not submit the overdue premium payment during the grace period, and Jackson National mailed the lapse notice to the Decedent by letter dated February 25, 2010, cancelling the policy. Therein, Jackson National explained that "your policy has now lapsed and . . . all coverage under this policy has ended." J.A. 82. The lapse notice advised that, if the Decedent submitted the January 25, 2010 premium payment by March 26, 2010, then "the policy will be automatically reinstated and we will waive additional requirements." Id. The notice clarified that "[t]his offer to reinstate automatically is not a waiver of the terms of the policy in the event of any future default of payment of premiums." Id. The notice also specified that, unless payment was received by March 26, 2010, the policy could only be reinstated if all unpaid premiums were paid along with accrued interest, the Decedent completed an enclosed application for policy reinstatement, and Jackson National approved that reinstatement application.

By January 2010, the Decedent was experiencing several health problems, including Parkinson's disease and mild dementia. His cognitive state vacillated between confusion and lucidity, though the Decedent continued to handle his personal affairs, including his finances. The Decedent was hospitalized

6

in May 2010 for a broken foot, and Wactor subsequently became aware that the Decedent had neglected to timely pay several of his bills.

Wactor called Jackson National's service center on June 11, 2010, inquiring as to the status of the policy. The Jackson National representative informed Wactor that the policy was no longer in force, and that the last premium payment had been received on October 25, 2009. The representative refused to provide Wactor with information on paying missed premiums or reinstating the policy. Rather, the representative told Wactor that the Decedent would need to contact Jackson National for instructions on reinstatement. Wactor explained that the Decedent might not be able to call the company because he was then hospitalized. The Jackson National representative ascertained that Wactor did not have the Decedent's financial power of attorney, and then suggested that the Decedent could call Jackson National and authorize Wactor to receive information. The next day — before any further action was taken with respect to the policy and the unpaid premiums — the Decedent passed away.

Wactor and her daughter Lisa Gunter worked on sorting out the Decedent's affairs. They searched through the Decedent's records for paperwork from Jackson National, but found no correspondence from 2010. A few days after the Decedent's

7

death, Gunter telephoned Jackson National to make a claim on the policy on Wactor's behalf. The Jackson National representative informed Gunter that the policy had lapsed. Following that phone call, Gunter wrote Jackson National a letter, dated June 15, 2010, in which Gunter described her father's health problems and enclosed three letters from his health care providers, which gave information about the cognitive problems that the Decedent was experiencing in 2010.

Before Gunter's letter was received, Jackson National formally denied Wactor's claim, by letter to Wactor dated June 16, 2010. Therein, Jackson National informed Wactor that the policy had "lapsed with no value on February 25, 2010 and there are no benefits payable to the beneficiary." J.A. 288. The decision to deny Wactor's claim was premised solely on Jackson National's record that the policy had been cancelled prior to the Decedent's death. The June 16, 2010 letter was generated by Jackson National's computer system and electronically signed by Jackson National Vice President Charles F. Field. Field was not actually involved in writing the letter, but his signature was affixed pursuant to company procedures for systems-generated claims correspondence.

Once Jackson National received Gunter's letter — and after Wactor's claim for benefits under the policy had been denied — Jackson National's customer relations department became

8

involved. Representative Kevin Schweda was assigned to the case. He was aware of the information provided by Gunter indicating that the Decedent had cognitive problems during the last five to six months of his life, but Schweda did not consider that information in reviewing Jackson National's denial of Wactor's claim. Rather, Schweda reviewed "the computer system that administers the policy, confirming that it had lapsed for nonpayment and the date that that occurred, confirmed that that occurred prior to the date of [the Decedent]'s death, confirmed that premium notices were mailed appropriately and that there was no coverage at the time of death." J.A. 245. From that review, Schweda determined that Wactor's claim had properly been denied.

B.

Wactor initiated this civil action in November 2011, alleging five causes of action — breach of contract, equitable estoppel, unjust enrichment, bad faith refusal to pay insurance benefits, and breach of the implied covenant of good faith and fair dealing predicated on Jackson National's handling of the claim.[4] Under each of those theories of relief, Wactor sought

---

[4] South Carolina law governs our assessment of Wactor's claims. First, "[t]he elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach." S. Glass & Plastics Co. v. Kemper, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012). Second, a party claiming
(Continued)

9

enforcement of the policy, including payment of the policy benefits to her as the sole beneficiary. Additionally, on her bad faith and implied covenant of good faith claims, Wactor asserted that Jackson National acted with reckless disregard, entitling her to recover consequential and punitive damages, along with attorney's fees and costs.

Following the close of discovery proceedings, Jackson National moved for summary judgment as to each of Wactor's claims, contending that no material fact was in dispute, and

---

estoppel must demonstrate that she lacked knowledge or the means of knowledge as to the truth of relevant facts, that she reasonably relied on the other party's conduct, and that she suffered prejudicial detriment. See Provident Life & Accident Ins. Co. v. Driver, 451 S.E.2d 924, 928 (S.C. Ct. App. 1994). Third, unjust enrichment is an available remedy where a party conferred a benefit on the defendant, the defendant realized that benefit, and it would be unjust for the defendant to retain that benefit without paying its value. See Pitts v. Jackson Nat'l Life Ins. Co., 574 S.E.2d 502, 512 (S.C. Ct. App. 2002). Fourth, to demonstrate that an insurance company denied a claim in bad faith, an insured must show the existence of a mutually binding insurance contract; that the insurer refused to pay benefits due under that contract; that the denial of benefits resulted from the insurer's bad faith or unreasonable action, breaching its implied duty of good faith and fair dealing; and that the insured suffered damages. See Cock-N-Bull Steak House, Inc. v. Generali Ins. Co., 466 S.E.2d 727, 730 (S.C. 1996). Finally, an insured may recover in tort based on an insurer's violation of the implied covenant of good faith and fair dealing with respect to the insurer's processing of a claim by "demonstrate[ing] bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract." Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616, 619 (S.C. 1983).

that it was entitled to judgment as a matter of law. In opposing that motion, Wactor maintained that four material facts remained at issue, precluding summary judgment: (1) whether the grace-period and lapse notices (collectively, the "cancellation notices") effectively cancelled the policy; (2) whether Jackson National acted in bad faith in refusing to pay benefits; (3) whether Jackson National was estopped from asserting that the policy was cancelled; and (4) whether Jackson National acted in good faith in processing the claim under the policy.[5]

1.

By it July 10, 2013 Opinion, the district court awarded summary judgment to Jackson National on all claims. The court addressed each of Wactor's contentions in turn.

a.

First, the district court addressed Wactor's arguments relating to the cancellation notices. Wactor contended that Jackson National — through its course of dealing in providing written grace-period notices to the Decedent on twenty-two occasions — waived its right to cancel the policy without

---

[5] In their briefings on Jackson National's summary judgment motion in the district court, the parties ordered their arguments in a slightly different manner than Wactor presented her claims in the Complaint. We, like the district court, review the parties' arguments in the manner presented in the summary judgment proceedings.

11

furnishing notice. Wactor relied on the Supreme Court of South Carolina's decision in Edens v. South Carolina Farm Bureau Mutual Insurance Co., 308 S.E.2d 670, 671 (S.C. 1983), as establishing that Jackson National could cancel the policy only if the Decedent actually received the cancellation notices; simply sending the notices was ineffective. Wactor submitted evidence from an expert witness, Gerald M. Finkel, opining that Edens applies. Because genuine disputes exist as to whether the Decedent actually received the cancellation notices, Wactor maintained that summary judgment could not be granted.

The district court found no merit to Wactor's arguments. The court determined that the expert opinions submitted by Wactor regarding Edens constituted legal conclusions and should be disregarded. The court then recognized that neither South Carolina law nor the terms of the policy require any notice prior to cancelling the policy. See Opinion 3-6. Given the policy's silence, the court reasoned that the policy contains no ambiguity as to notice, rendering Edens inapplicable. See id. at 4-5; Edens, 308 S.E.2d at 671 (finding life insurance policy's provision stating cancellation could be effected by "giving written notice" to be ambiguous, and that, as a matter of law, contract must be interpreted to require "actual receipt [as] a condition precedent to cancellation"). Further, the court rejected Wactor's contention that Jackson National waived

12

its right to cancel the policy based on its prior course of dealings with the Decedent. Although Jackson National had accepted late payments from the Decedent on twenty-two occasions before 2010, each of those payments was made during the grace period. Jackson National had never accepted payments from the Decedent after the grace period, and thus "did nothing that would have created a reasonable expectation of insurance coverage past the expiration of the grace periods." See Opinion 6. Accordingly, Jackson National's prior conduct "cannot in any way be construed as a waiver or forfeiture [of] cancelling the policy for non-payment of premiums after a subsequent grace period has lapsed." Id. The court concluded that, because the undisputed evidence was that Jackson National mailed the cancellation notices, and because Jackson National was not obliged to provide notice before cancelling the policy, no genuine issue of material fact existed regarding the cancellation notices.

b.

Second, the district court assessed Wactor's contentions regarding bad faith. Wactor's bad-faith argument hinged on her position that the policy was not effectively cancelled because the Decedent had not received the cancellation notices. From that premise, Wactor asserted that Jackson National unreasonably refused to pay benefits due, again relying on the expert

13

opinions of Gerald Finkel. She further maintained that Jackson National acted in bad faith by denying her claim for benefits under the policy without investigating the Decedent's cognitive abilities or its prior course of dealings with the Decedent, because Jackson National knew that the Decedent had not received the cancellation notices.

The district court disagreed. The court noted that to succeed on a claim of bad faith refusal to pay benefits, Wactor must establish, inter alia, that Jackson National's refusal to pay benefits resulted from its bad faith or unreasonable actions. See Opinion 7 (citing Crossley v. State Farm Mut. Auto. Ins. Co., 415 S.E.2d 393, 396-97 (S.C. 1992)). The "bad faith or unreasonable action" requirement turns on whether Jackson National had a reasonable ground to contest Wactor's claim. Id. (citing Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455, 462 (S.C. 2004); Hansen ex rel. Hansen v. United Servs. Auto. Ass'n, 565 S.E.2d 114, 119 (S.C. Ct. App. 2002)). The court disregarded Wactor's expert evidence because it amounted to legal conclusions. The parties agreed that the Decedent had not paid his premiums after 2009, and the court determined that, "[b]ased upon the non-payment of the premiums and the lapse of the policy, Jackson National had reasonable grounds for denying this claim." Id. at 8. Accordingly, no genuine dispute of material fact existed as to bad faith.

14

c.

Third, the district court addressed Wactor's estoppel-based arguments. Wactor contended that Jackson National should be estopped from relying on the policy's cancellation based on Wactor's June 11, 2010 phone call to Jackson National. By making that call, Wactor had sought information so that she might "cure any breach that may have occurred," but "Jackson National refused to communicate with [Wactor], concealing all meaningful information." J.A. 190. Had Jackson National informed Wactor of the outstanding balance on the policy and how it could be reinstated, she might have secured the policy's reinstatement before the Decedent passed away. Wactor thus maintained that factual disputes remained "regarding the inequitable and self-serving application of [Jackson National's] privacy policy," precluding summary judgment. Id.

The district court determined that Jackson National was entitled to judgment as a matter of law on Wactor's estoppel claim. The undisputed evidence was that, during the June 11, 2010 phone call, Jackson National notified Wactor of several ways she could obtain authority to act for the Decedent. Although Wactor hypothesized that she could have cured the Decedent's breach had Jackson National provided her with more information, the court concluded that "there is simply no

15

evidence of any material misrepresentation by Jackson National or detrimental reliance by Wactor."  See Opinion 10.

d.

Fourth, the district court examined Wactor's argument that disputes of material fact existed as to whether Jackson National breached the implied duty of good faith and fair dealing. Specifically, Wactor maintained that factual disputes remained regarding the cancellation notices, Jackson National's investigation of her claim, and the procedures and policies utilized by Jackson National in its handling of the claim.

The district court rejected Wactor's arguments, observing that whether Jackson National breached its duty to act in good faith depended on whether a reasonable ground supported its decision.  See Opinion 11 (citing Crossley, 415 S.E.2d at 397; Helena, 594 S.E.2d at 462).  The court determined that "nothing in the record [would] suggest that Jackson National acted in an unreasonable manner in denying coverage or its handling of this claim," given that the premiums had not been paid and coverage had lapsed.  Id.  Therefore, "no rational trier of fact could find that Jackson National acted unreasonably in its handling of this claim."  Id. (citing Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996)).

In light of those conclusions, the district court granted Jackson National's motion for summary judgment. On July 10, 2013, judgment was entered in Jackson National's favor.

2.

On July 19, 2013, Wactor moved, pursuant to Federal Rule of Civil Procedure 59(e), that the district court reconsider the Opinion. Wactor asserted that the court had misunderstood or misconstrued her waiver argument. She clarified her position that, through its course of dealing with the Decedent, Jackson National undertook a duty "of not only sending, but actually furnishing" the cancellation notices. See J.A. 494. According to Wactor, that course of dealing modified the terms of the policy. See id. (citing Carolina Aviation, Inc. v. Glens Falls Ins. Co., 51 S.E.2d 757, 761 (S.C. 1949); Keith v. River Consulting, Inc., 618 S.E.2d 302, 305 (S.C. Ct. App. 2005)). And, because the policy thereby contained a notice provision, the Edens decision applied, meaning that Jackson National could only cancel the policy if it first verified that the Decedent had actually received the cancellation notices.

By its Reconsideration Order of October 8, 2013, the district court denied Wactor's Rule 59(e) motion. The court observed that a judgment should only be amended pursuant to Rule 59(e) in extraordinary situations involving an intervening change in law, previously unavailable evidence, or a need to

17

"correct a clear error of law or prevent manifest injustice."
See Reconsideration Order 1 (internal quotation marks omitted).
The court determined, however, that Wactor had not demonstrated
that she was entitled to relief based on waiver, which is "'a
voluntary and intentional abandonment or relinquishment of a
known right.'" Id. at 2 (quoting Janasik v. Fairway Oaks Villas
Horizontal Prop. Regime, 415 S.E.2d 384, 387 (S.C. 1992)).
Additionally, the court recognized that "'the party claiming
waiver must show that the party against whom waiver is asserted
possessed, at the time, actual or constructive knowledge of
[its] rights or of all the material facts upon which they
depended.'" Id. (quoting Janasik, 415 S.E.2d at 387-88)). The
court observed that the record contained no evidence that
Jackson National took measures to ensure that the Decedent
received any of the twenty-two grace-period notices sent before
2010. Nor did the record show that any of those twenty-two
notices were actually received by the Decedent; Wactor asserted
only that "[the] Decedent 'apparently' received" those notices.
Id. The court thus concluded that, although "Jackson National
may have established a course of dealing and waived its right to
cancel during the grace period by mailing the lapse notices, the
intent to waive its right to cancel based upon receipt cannot be
established through Jackson National's prior conduct." Id. at
2-3. Accordingly, the court denied Wactor's Rule 59(e) motion.

18

This appeal ensued, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

In this appeal, Wactor reiterates several contentions that she had advanced in the district court in opposition to Jackson National's summary judgment motion and in support of her own motion for reconsideration.[6] We review de novo the district court's summary judgment award, crediting Wactor's evidence and drawing all justifiable inferences in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment may be awarded only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the court's denial of Wactor's reconsideration motion for abuse of discretion. See Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir.

---

[6] On appeal, Wactor asserts that a factual dispute exists regarding whether Jackson National mailed the cancellation notices because computer-system records upon which Jackson National relies are unreliable. Wactor failed to raise that contention, however, in the summary judgment proceedings in the district court. See J.A. 171-92. Wactor did raise that contention in support of her reconsideration motion, but the district court declined to address it. See Reconsideration Order 3 n.3. Because Wactor failed to timely assert her argument about Jackson National's computer system, she has not preserved that contention for appeal. See In re Under Seal, 749 F.3d 276, 287 (4th Cir. 2014); Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir. 1999).

19

2005). Relief from a judgment is available under Rule 59(e) only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Id. (internal quotation marks omitted).

Having carefully examined the record and assessed the parties' written submissions, together with the argument of counsel, we are satisfied that summary judgment was properly awarded and reconsideration properly denied in the district court. We are therefore content to affirm the judgment on the sound reasoning of the district court's Opinion and subsequent Reconsideration Order.

AFFIRMED