Robert WEITZMAN, Marilyn Weitzman and Eliza Weitzman, Plaintiffs,

v.

BLAZING PEDALS, INC., Defendant.

Civ. A. No. 92–B–2281.

United States District Court,
D. Colorado.

Sept. 16, 1993.

**126**

David H. Wollins, Michael A. Zahorik, McGeady Weston Sisneros & Wollins, P.C., Denver, CO.

Howard Bremer, Watson, Nathan & Bremer, Denver, CO.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER comes before the Court on Plaintiff's motion to compel. The Court has reviewed the pleadings and concluded that oral argument is unnecessary.

This case arises out of injuries sustained to Plaintiff Marilyn Weitzman as a result of a bicycle accident (accident) allegedly caused by Defendant's negligence. Plaintiffs have filed this motion to compel seeking production of documents relating to an investigation conducted by Defendant's insurer, Scottsdale Insurance Company (Scottsdale). Defendant claims that the documents are protected by the work product doctrine.

■ The work product doctrine protects materials prepared in anticipation of litigation. It does not protect materials prepared in the "ordinary course of business." *Western Nat'l Bank v. Employers Ins. of Wausau*, 109 F.R.D. 55, 57 (D.Colo.1985). The Colorado Supreme Court has declared that the general standard to be applied when deciding whether something was prepared in anticipation of litigation is "whether, in light of the nature of the document and the factual situation in the particular case, the party resisting discovery demonstrates that the document was prepared or obtained in contemplation of specific litigation." *Hawkins v. District Court*, 638 P.2d 1372, 1379 (Colo. 1982).

■ The general rule in Colorado is that insurance adjusters' investigative reports are prepared in the ordinary course of business and, therefore, are discoverable. *Western Nat'l Bank*, 109 F.R.D. at 57; *American Bankers Ins. Co. v. Colorado Flying Academy*, 97 F.R.D. 515, 517 (D.Colo.1983); *Hawkins*, 638 P.2d at 1377. The Colorado cases on this issue, however, all involve investigations of first party claims, initiated to adjust the insured's own loss. They do not involve liability investigations, or third party claims. When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith. There is no initial contemplation of litigation.

■ By contrast, when a liability insurer investigates a third party claim, the investigation is made in anticipation of claims which, if denied, likely will lead to litigation. *See Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982). Although a claim may be settled short of the instigation of legal action, there always is the possibility that the claim will end in litigation. The recognition of this possibility provides the insurer the impetus to gather information regarding the circumstances of the claim. *See Ashmead v. Harris*, 336 N.W.2d 197, 201 (Iowa 1983). In a sense, liability insurance is nothing more than litigation insurance. *See Kandel v. Tocher*, 22 App. Div.2d 513, 256 N.Y.S.2d 898, 899 (1965). For this reason, it is logical to conclude that, while claim files generated in relation to first party claims are made in the ordinary course of business and are discoverable, files generated during the investigation of third party claims are made in anticipation of litigation and are not discoverable. A number of courts have adopted this approach. *See, e.g., Janicker, Ashmead,* and *Kandel, supra.*

■ The Colorado courts have not explicitly adopted this position. In fact, *Kay Laboratories v. District Court*, 653 P.2d 721 (Colo. 1982) contains sweeping language as to the discoverability of insurance claims files. These broad pronouncements, however, are merely dicta made without proper briefing of the issue. Such dicta is not controlling on the determination of the issue raised here.

*Coon v. Berger,* 41 Colo.App. 358, 588 P.2d 386 (1978), *aff'd,* 199 Colo. 133, 606 P.2d 68 (Colo.1980). In subsequent cases, the Colorado courts have recognized in other contexts that "the relationship of the insurer in a first-party claim context is significantly different from the relationship which characterizes the third-party claim context." *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1274 (Colo.1985). *See also Farmers Group v. Trimble,* 691 P.2d 1138, 1141 (Colo.1984). Because of the adversarial nature of the relationship between an insurer and a third party claimant, this Court finds that the Scottsdale claims file is protected by the work product doctrine and is not discoverable, absent a showing of substantial need. Plaintiffs have not made such a showing of substantial need.

■ Even if the rule of *Hawkins* were applicable to third party insurance claim files, this file would not be discoverable. The Colorado Supreme Court noted in *Hawkins* that "under appropriate circumstances an insurance company's investigation of a claim may ... shift from an ordinary business activity to conduct 'in anticipation of litigation.' Admittedly, there is no bright line between these two types of activity in all cases." *Hawkins,* 638 P.2d at 1378. The party resisting discovery has the burden of demonstrating that the document was prepared or obtained in order to defend the specific claim which already had arisen and, when the documents were prepared or obtained, there was a substantial probability of imminent litigation over the claim, or a lawsuit already had been filed. *Id.* at 1379. *Accord, Nat'l Farmers Union Property and Casualty Co. v. District Court,* 718 P.2d 1044, 1048 (Colo.1986).

■ Here, on August 18, 1992, counsel for Plaintiffs presented a written demand for settlement in the amount of $225,000 to Defendant. Attached to that demand was a proposed complaint to be filed in this Court. The demand letter stated that:

This settlement offer will remain open until October 1, 1992, at which point, if such offer is not accepted ... such offer will be withdrawn. In such event, the Weitzmans have authorized the Firm to take such steps as are necessary to protect their interests, including, but not limited to, the filing of the complaint inclosed for your convenience.

(*See* Affidavit of Scott A. McGath, Esq.)

Defendants then contacted an attorney to assist them in this matter. Upon a review of the demand letter and the complaint, counsel for Defendant deemed an investigation to be necessary. On September 28, 1992, counsel for Defendant forwarded a copy of the demand to Scottsdale. On November 4, 1992, counsel for Defendant sent a facsimile transmission to Scottsdale stating that "counsel has threatened litigation in this case ..." and requested that steps be taken for the "specific purpose of assisting our client, Blazing Pedals, Inc., in the pending litigation." (*Id.*)

All of the materials Plaintiffs seek were generated after August 18, 1992, when Plaintiffs sent their demand letter and threatened litigation. Under these circumstances, it appears that when the materials sought were prepared, there was a substantial probability of imminent litigation over the claim. *Compare Henderson v. Zurn Indus., Inc.,* 131 F.R.D. 560, 571 (S.D.Ind.1990). (letter contained explicit threat to "initiate a lawsuit within the next two weeks"). The materials, therefore, are protected by the work product doctrine.

IT IS THEREFORE ORDERED that Plaintiffs' motion to compel is denied.