**In re Kevin SILVA and Molly Silva, Plaintiffs,**

v.

**BASIN WESTERN, INC.; Richard Stewart Transportation and Sinclair Oil Corporation; And Bradley Petroleum, Inc., Defendants.**

**No. 01SA303.**

Supreme Court of Colorado, En Banc.

June 3, 2002.

Barry I. Tillis, Littleton, Colorado, Attorney for Plaintiffs.

Senter Goldfarb & Rice, L.L.C., William L. Senter, Tiffaney A. Norton, Denver, Colorado, Attorneys for Defendants.

Roberts Levin & Patterson, P.C., Daniel W. Patterson, Denver, Colorado, Attorneys for Amicus Curiae, Colorado Trial Lawyers Association.

Johnson & Ayd, P.C., James D. Johnson, Denver, Colorado, Attorneys for Amicus Curiae, Colorado Defense Lawyers Association.

Justice MARTINEZ delivered the Opinion of the Court.

In this original proceeding, brought pursuant to C.A.R. 21, Petitioners Basin Western, Inc. and Richard Stewart Transportation (collectively "Basin Western") seek relief from a trial court order compelling the production of information regarding insurance reserves and settlement authority in the personal injury claim of Respondents Kevin and Molly Silva ("the Silvas"). The trial court ordered disclosure and awarded attorney

fees to the Silvas as a sanction for Basin Western's failure to disclose the information. Basin Western petitioned this court for a writ prohibiting the trial court from enforcing its discovery order and awarding attorney fees to the Silvas. We issued a rule to show cause and now make the rule absolute.

Whether insurance reserves and settlement authority fall within the scope of discovery is a question of first impression in Colorado. Therefore, we explore the nature of insurance reserves and settlement authority to determine whether such information is reasonably calculated to lead to admissible evidence in a personal injury action against an insured party and is discoverable. After addressing our jurisdiction in this case, we next look at the rules of discovery generally. We then discuss the nature of reserves and settlement authority, and how other jurisdictions have viewed the discoverability of such information. We conclude that reserves and settlement authority are not relevant to the Silvas' personal injury action against Basin Western and are therefore not discoverable. We further hold that the trial court erred in awarding attorney fees to the Silvas as a sanction for Basin Western's alleged discovery violation.

## I. Facts and Procedure

The underlying case arises from an incident that occurred on July 23, 1999, when Kevin Silva's car caught fire while he was driving past a gas station. Kevin Silva fled his burning car, while it was still moving, but before it exploded. At the time of the accident, an employee of Basin Western, Inc. was delivering gasoline to the gas station in a tanker leased from Richard Stewart Transportation. The Silvas allege this Basin Western employee had negligently caused a stream of gasoline to flow from the station out onto the street. They argue that the stream of gasoline caused Kevin Silva's car to catch fire as he drove past the station. The Silvas do not claim that Kevin Silva suffered any physical injuries in the accident, but they claim the accident caused him emotional suffering, including Post–Traumatic Stress Disorder (PTSD).

After hiring an attorney who initially attempted to negotiate a settlement with Basin Western's insurer, AIG Claim Services, Inc. (AIG), the Silvas filed a complaint. During discovery, the Silvas requested that Basin Western produce the entire contents of the AIG insurance file compiled prior to the filing of the complaint. Basin Western produced approximately one thousand pages of investigatory materials from the file but redacted information regarding reserves and settlement authority. Basin Western also refused to disclose eleven letters, correspondence between Basin Western employees and insurance adjusters for AIG. Basin Western provided a privilege log to the Silvas, claiming the redacted information and letters were either irrelevant, unlikely to lead to the discovery of admissible evidence, or prepared in anticipation of litigation.

The Silvas responded with a motion to compel discovery. The trial court accepted the Silvas' argument that the contested information was prepared by insurance adjusters for Basin Western in the ordinary course of business, not under the direction of counsel, and was therefore discoverable. The trial court ordered Basin Western to produce the letters, reserves, settlement authority, and the estimated value of the case. The court further awarded attorney fees to the Silvas as a sanction against Basin Western pursuant to Colorado Rule of Civil Procedure 37. Basin Western petitioned this court for relief from the trial court's order.

## II. Rule 21 Jurisdiction

■ This court has original jurisdiction under C.A.R. 21 to review whether a trial court abused its discretion in circumstances where a remedy on appeal would prove inadequate. *In re Leaffer v. Zarlengo*, 44 P.3d 1072, 1077–78 (Colo.2002); *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 975 (Colo. 1999). As a general rule, orders pertaining to discovery are interlocutory in nature and not reviewable in an original proceeding. *Bond v. Dist. Court*, 682 P.2d 33, 36 (Colo. 1984). However, this court has not hesitated to review discovery rulings where a pretrial discovery order would cause unwarranted damage to a litigant that could not be cured

on appeal. *See In re Leaffer*, 44 P.3d at 1077; *Hawkins v. Dist. Court*, 638 P.2d 1372 (Colo.1982); *Phillips v. Dist. Court*, 194 Colo. 455, 573 P.2d 553 (1978). If Basin Western is improperly compelled to produce the contested information from AIG's insurance files the damage will not be curable on appeal. *See Bond*, 682 P.2d at 36. Accordingly, we exercise original jurisdiction to determine whether the trial court erred in ordering the disclosure of reserves and settlement authority in the Silvas' personal injury action against Basin Western.

### III. Reserves

#### A. Purpose & Scope of Discovery

The scope of discovery under the Colorado Rules of Civil Procedure is very broad. The purposes of pretrial discovery include the elimination of surprise at trial, the discovery of relevant evidence, the simplification of the issues, and the promotion of expeditious settlement of cases. *Id.* at 40; *Hawkins*, 638 P.2d at 1375. The test for determining whether information is discoverable is stated in Rule 26(b)(1) of the Colorado Rules of Civil Procedure:

> parties may obtain discovery regarding any matter, not privileged, which is *relevant to the subject matter* involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. The information sought *need not be admissible at trial if* the information sought appears *reasonably calculated to lead to admissible evidence.*

Colo. R. Civ. P. 26(b)(1) (emphasis added). Relevancy for purposes of discovery is not the same as relevancy for admissibility of evidence at trial. *Williams v. Dist. Court*, 866 P.2d 908, 911 (Colo.1993); *Kerwin v. Dist. Court*, 649 P.2d 1086, 1088 (Colo.1982). Thus, Colo. R. Civ. P. 26(b)(1) permits parties to obtain "discovery regarding any unprivileged, relevant matter that 'relates to the claim or defense of the party seeking

discovery or to the claim or defense of any other party' if it is 'reasonably calculated to lead to the discovery of admissible evidence.' " *In re Leaffer*, 44 P.3d at 1083.

We liberally construe discovery rules to eliminate surprise at trial, discover relevant evidence, simplify issues, and promote the expeditious settlement of cases. *Bond*, 682 P.2d at 40; *Jenkins v. Dist. Court*, 676 P.2d 1201, 1205 (Colo.1984). In close cases, the balance must be struck in favor of allowing discovery. *Williams*, 866 P.2d at 911; *Jenkins*, 676 P.2d at 1205. For this reason, a motion to compel discovery is committed to the discretion of the trial court and the court's determination must be upheld on appeal absent a clear abuse of discretion. *Williams*, 866 P.2d at 911.

Although the law generally favors discovery, the scope of discovery is not limitless. *Leidholt v. Dist. Court*, 619 P.2d 768, 770 (Colo.1980). The need for discovery must be balanced by weighing a party's right to privacy and protection from harassment against the other party's right to discover information that is relevant. *Id.* at 770–71. Thus, the information sought through discovery must be relevant to the subject matter of the action and reasonably calculated to lead to the discovery of admissible evidence.

#### B. Nature of Reserves & Settlement Authority

The dispute between Basin Western and the Silvas involves the discoverability of insurance reserves and settlement authority. The term "reserve" or "reserves" has a special meaning in the law of insurance. *Maryland Cas. Co. v. United States*, 251 U.S. 342, 350, 40 S.Ct. 155, 64 L.Ed. 297 (1920); *In re Couch*, 80 B.R. 512, 516 (S.D.Cal.1987). "While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which with accretions from interest, is set aside, 'reserved,' as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment." *Maryland Cas. Co.*, 251 U.S. at 350,

40 S.Ct. 155; *In re Couch,* 80 B.R. at 516. More simply, reserves are the funds insurance companies set aside to cover future expenses, losses, claims, or liabilities. *Black's Law Dictionary* 1307 (6th Ed.1990). There are several different subcategories of reserves.[1] However, any differences in the various types of reserves do not affect our analysis; we therefore find it unnecessary to differentiate between them.

 Reserves are subject to the same relevancy standard for discovery as other information. Reserves cannot automatically be deemed irrelevant to an insured's bad-faith claim against an insurer. *Lipton v. Superior Court,* 48 Cal.App.4th 1599, 56 Cal. Rptr.2d 341, 343 (1996). Reserves may nevertheless be irrelevant for discovery purposes. *Id.* As one court explained, "An insured is entitled to discovery of loss reserve information unless the trial court can, as a matter of law, conclude that it is not relevant to the subject matter or is not calculated to lead to the discovery of admissible evidence." *Id.* at 350. In essence, information regarding reserves was neither automatically protected from, nor subject to, discovery merely because an insurer prepared the information. Rather, reserve information is subject to the same test for discoverability as any other matter.

Furthermore, reserves should not be equated with an admission or valuation by the insurer:

> A common misconception is that an insurer's loss reserves are the same as settlement authority. They are not. The main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately as possible, the insured's *potential* liability. It does not automatically authorize a settlement at that figure.

*Id.* at 348–49. Reserve amounts are only partially within the insurer's control. *In re Couch,* 80 B.R. at 516. Modern statutes, including Colorado statutes, require insurers to maintain reserves to assure the insurer's ability to satisfy its potential obligations under its policies. § 10–3–208, 3 C.R.S. (2001); 3 C.C.R. 702–3; *see also In re Couch,* 80 B.R. at 516; 43 Am.Jur.2d Insurance § 28 (1982 & Supp.2002). The insurer must reasonably estimate the amount necessary to provide for the payment of all losses and claims for which the insurer may be liable. *Lipton,* 56 Cal.Rptr.2d at 350. The reserves must also reflect all potential claim expenses and any claim the insurer undertakes to defend since the insurer will have claim handling expenses, including attorney fees and court costs. *In re Couch,* 80 B.R. at 516. The reserve requirement therefore reflects a desire on the part of the states and the insurance companies themselves to ensure that resources are available to cover the insurer's future liabilities. Thus, a particular reserve amount does not necessarily reflect the insurer's valuation of a particular claim.

 Settlement authority or recommendations[2] similarly cannot be equated with the insurer's valuation of a particular claim. Settlement authority generally refers to an agent's ability to accept an offer of settlement that binds the principal up to and including a certain amount of money. *See* Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 203:7 (1995); *John Doe v.*

---

1. The term reserve includes "unearned premium reserve" to meet future liabilities on policies; "liability reserve" to satisfy claims, indefinite in amount and as to time of payment but accrued on liability and workers' compensation policies; and "reserve for loss claims" accrued on policies other than those provided for in the "liability reserve." *Maryland Cas. Co.,* 251 U.S. at 350, 40 S.Ct. 155. Loss reserves represent the amount anticipated to be sufficient to pay all obligations for which the insurer may be responsible under the policy with respect to a particular claim. *Lipton,* 56 Cal.Rptr.2d at 348–49. That amount necessarily includes expenses that are likely to be incurred in connection with the settlement or adjustment of the claim, as well as the legal fees and other costs required to defend the insured. *Id.*

2. While the trial court's order refers to "settlement authority," the briefs in this case refer to "settlement recommendations." The terms have related but distinct meanings. "Settlement authority" generally means the amount that an agent of a party is authorized to offer in settlement of a claim. *See John Doe,* 971 F.Supp. at 1306. "Settlement recommendation" is the amount a party or agent recommends be offered to settle a claim. For simplicity, we discuss these terms together using the term "settlement authority."

*Nebraska,* 971 F.Supp. 1305, 1306 (D.Neb. 1997) (holding that full settlement authority requires a representative for a company with a defense or indemnity obligation to have final settlement authority to commit the company, at his or her discretion, to settle, authorize dismissal of a case with prejudice, or accept a settlement amount). Compromises and offers to compromise are not admissions of liability. CRE 408; *Scott Co. of Cal. v. MK–Ferguson Co.,* 832 P.2d 1000, 1005 (Colo. Ct.App.1991); *see also Signature Dev. Co., Inc. v. Royal Ins. Co. of America,* 230 F.3d 1215 (10th Cir.2000).[3] Courts are unwilling to "infer that settlement authority invariably constitutes a final, objective assessment of a claims worth to which an insurer may be held." *Signature Dev. Co., Inc.,* 230 F.3d at 1215 (citing *Kosierowski v. Allstate Ins. Co.,* 51 F.Supp.2d 583, 592 n. 8 (E.D.Pa.1999) and *Voland v. Farmers Ins. Co.,* 189 Ariz. 448, 943 P.2d 808, 812 (Ct.App.1997) (stating that "that the carriers considered [plaintiff's] claim's 'fair value' to be $30,000 and therefore offered to settle for that amount does not mean they acknowledged that was 'the minimal amount the insurer's own adjuster had evaluated as being owed to the insured.'")).

Neither reserves nor settlement authority reflect an admission by the insurance company that a claim is worth a particular amount of money. Statutory requirements, limitations in the evaluation, and bargaining tactics limit the usefulness of reserves and settlement authority as valuations of a claim.

### C. Discovery of Reserves & Settlement Authority Generally Precluded

A few courts have simply found that the purposes of discovery are not served by compelling disclosure of reserves and settlement authority. For example, in addressing this

issue, the *Union Carbide* court expressed its view that the discovery rules were directed to opinions as to factual issues in controversy and did not render the internal opinions and conclusions of the insurer setting the reserves discoverable. *Union Carbide v. Travelers Indemn. Co.,* 61 F.R.D. 411, 412 (W.D.Pa.1973). "[W]e do not believe that the proper end of discovery—expedition of the litigation either by narrowing the area of controversy or by avoiding unnecessary testimony or by providing a lead to evidence— will be served by allowing discovery of the reserves in question." *Id.; see also Leksi, Inc. v. Fed. Ins. Co.,* 129 F.R.D. 99, 106 (D.N.J.1989). The *Union Carbide* court declined to compel discovery, reasoning that the contingent and uncertain nature of reserves rendered questions about reserve tantamount to hypothetical questions. *Union Carbide,* 61 F.R.D. at 412; *see also Fed. Realty Inv. Trust v. Pac. Ins. Co.,* 760 F.Supp. 533, 540 (D.Md.1991); *Nat'l Union Fire Ins. Co. v. Stauffer Chem. Co.,* 558 A.2d 1091, 1097 (Del.Super.Ct.1989).

Other courts have explicitly relied upon the tenuous relationship between reserve amounts or settlement authority and an insurer's evaluation of a claim to find that the nature of reserves makes them irrelevant for discovery purposes. *See, e.g., Signature Dev. Co., Inc.,* 230 F.3d at 1223 (holding that reserves and settlement authority do not necessarily constitute a final objective assessment of a claims' worth); *In re Couch,* 80 B.R. at 512 (stating that reserves cannot accurately or fairly be equated with an admission of liability or the value of a particular claim); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* 117 F.R.D. 283, 287 (D.D.C. 1986) (holding that reserves of very tenuous, if any relevance); *Leksi, Inc.,* 129 F.R.D. at 99 (same); *Fid. & Deposit Co. of Md. v.*

---

**3.** Basin Western challenges the trial court's order compelling it to disclose settlement authority and settlement recommendations on the ground that Colorado Rule of Evidence (CRE) 408 makes compromises and offers to compromise inadmissible at trial. However, CRE 408 does not apply to communications between an insured party and its insurer regarding the merits of a claim. *Scott Co. of Cal.,* 832 P.2d at 1006; *see also Raybestos Prods. Co. v. Younger,* 54 F.3d 1234 (7th Cir.1995) (holding that because a letter did

not relate to any proposal for settlement Fed. R.Evid. 408 did not bar its admission). Nor does CRE 408 apply to "situations in which someone acknowledges that a certain claim is valid or valid to a certain extent", or statements to the effect: "I think your claim is worth 'X'." *Scott Co. of Cal.,* 832 P.2d at 1006. Accordingly, Basin Western cannot rely on CRE 408 to protect against the disclosure of the documents at issue in this case.

*McCulloch,* 168 F.R.D. 516, 525 (E.D.Pa. 1996) (same); *Union Carbide,* 61 F.R.D. at 412 (same); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.,* 623 A.2d 1099, 1109 (Del.Super.Ct.1991) (holding reserve information to be irrelevant); *Nat'l Union Fire Ins. Co.,* 558 A.2d at 1091 (same); *Schierenberg v. Howell–Baldwin,* 571 N.E.2d 335, 337 (Ind. Ct.App.1991) (holding the amount of reserves, settlement authority, and liability opinions were properly redacted and protected from discovery because they were not reasonably calculated to lead to the discovery of admissible evidence). *Fidelity & Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 525 (E.D.Pa.1996), held that requests for production of reserve information are not "reasonably calculated to lead to the discovery of admissible evidence."

 Courts finding reserves and settlement authority unlikely to lead to admissible evidence reason that reserves and settlement authority reflect an insurer's basic assessment of the value of a claim taking into consideration the likelihood of an adverse judgment, but do not normally entail a thorough factual and legal evaluation when routinely made as a claim analysis. *Signature Dev. Co., Inc.,* 230 F.3d at 1223; *Indep. Petrochemical Corp.,* 117 F.R.D. at 288; *Nat'l Union Fire Ins. Co.,* 558 A.2d at 1097. These courts characterize reserves as accounting entries that an insurance company regularly uses to set aside sufficient funds in the event of policyholder liability. *Hoechst Celanese Corp.,* 623 A.2d at 1109. As such, the reserves do not evidence an acknowledgment by the insurers of liability. *Id.* Instead, these courts see reserves as an appropriate business decision justified by the need to preserve financial stability given the unpredictability of future liabilities. *Id.* The *McCullough* court acknowledged that the relevancy of reserve data to a bad faith counterclaim presents a slightly closer question. *McCulloch,* 168 F.R.D. at 525. However, it concluded the reserve data would merely suggest that the cost of defending the third-party claim increased over time. *Id.* These courts ruled that reserves do not reflect the value of the case, have limited relevance and little probability of leading to admissible evidence, and held reserves undiscoverable. *In*

*re Couch,* 80 B.R. at 512; *Indep. Petrochemical Corp.,* 117 F.R.D. at 287; *Leksi, Inc.,* 129 F.R.D. at 99; *McCulloch,* 168 F.R.D. at 525; *Union Carbide,* 61 F.R.D. at 412; *Hoechst Celanese Corp.,* 623 A.2d at 1109; *Nat'l Union Fire Ins. Co.,* 558 A.2d at 1097–98. Similarly, *Signature Development Companies, Inc. v. Royal Insurance Company of America,* 230 F.3d at 1223–24, held that authorization to settle for a particular amount did not mean that the amount reflected the insurance company's final assessment of the claim. Thus, as a general rule, reserves and settlement authority are not reasonably calculated to lead to discoverable evidence and are therefore not subject to discovery.

D. Reasons for Finding Reserves Discoverable Do Not Apply to the Silvas' Personal Injury Tort Action Against Basin Western

Most cases addressing the discoverability of insurance reserves have done so in the context of disputes between an insured party and his or her insurer, such as declaratory judgment or bad faith claims. *See* Russ & Segalla, *supra,* § 251:29. Such first-party claims between an insured and his insurer differ from the Silvas third-party personal injury tort claim. However, we have looked to these cases for guidance in determining whether the trial court properly ordered disclosure of reserves and settlement authority in the present case. We now consider these differences to determine whether, and to what extent, they effect our analysis.

 The relationship between a plaintiff and the defendant's insurer in third-party personal injury tort claims such as this one differs significantly from the relationship between an insured party and his insurer in a first-party dispute between them. *See Weitzman v. Blazing Pedals, Inc.,* 151 F.R.D. 125, 126 (D.Colo.1993). Third-party personal injury tort claims involve liability investigations. *Id.* When a liability insurer investigates a third-party personal injury claim, the investigation is made in anticipation of claims which, if denied, will likely lead to litigation. *Id.* Although a claim may be

settled short of legal action, there is always the possibility that a claim will end in litigation. *Id.* In contrast, when a first-party claim between an insured and his or her insurer is at issue, the insured "is asking for payment under the terms of the insurance contract between him and the insurance company." *Tayler v. Travelers Ins. Co.,* 183 F.R.D. 67, 71 (N.D.N.Y.1998)(underinsured motorist claim by insured against his own insurer) (citing *Weitzman,* 151 F.R.D. at 126). The insurance company owes the insured a duty to adjust his claim in good faith. *Id.* The scope of discovery of insurance information should therefore be broader in a first-party claim between an insured party and his insurer than in a third-party personal injury claim. Consequently, courts have been more likely to find reserves and settlement authority discoverable in claims between an insured and his or her insurer, such as a bad faith claim or declaratory judgment action, than in third-party claims.

We found only two cases in which a court extended the discovery of reserves beyond a first-party dispute between an insured and his or her insurer. *See, e.g., Simon v. G.D. Searle & Co.,* 816 F.2d 397 (8th Cir.1987); *Gen. Elec. Capital Corp. v. Directv, Inc.,* 184 F.R.D. 32 (D.Conn.1998). Both cases are distinguishable from the present case and neither persuades us that the trial court in this case correctly compelled discovery of reserves and settlement authority.

*General Electric Capital Corp. v. Directv, Inc.,* 184 F.R.D. 32 (D.Conn.1998), rejected the notion that reserve information is relevant only in cases in which an insured has sued his or her insurer regarding coverage. *See Gen. Elec. Capital Corp.,* 184 F.R.D. at 33. Instead, the court found that reserve information could be relevant to cases involving notice issues. *Id.* After an in camera review of eighty-four contested documents, the court found four of the documents to be relevant, but protected by the work-product doctrine and/or the attorney client privilege and five other documents both relevant and nonprivileged.

*Simon v. G.D. Searle & Co.,* 816 F.2d 397 (8th Cir.1987), addressed whether corporate risk management documents prepared by nonlawyer employees of a self-insured company, which contained aggregate reserve information compiled by the risk management employees from individual reserve estimates made by the company's attorneys, were precluded from discovery by Fed.R.Civ.P. 26(b)(2). The Eighth Circuit held "the discovery of matters pertaining to insurance depend[s] on whether such information [is] relevant to the subject matter or reasonably calculated to lead to admissible evidence." *Id.* at 404. The court upheld the trial court's disclosure of the documents, finding them relevant to the issues of notice, defect, and punitive damages. *Id.* Statements made elsewhere in the opinion indicate that the court based its decision, at least in part, on the fact that the documents involved aggregate reserve figures. The court noted:

> Individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim and are by "their very nature prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work product.

*Id.* at 401. This language suggests that the court would not have permitted discovery if the risk management documents had contained individual reserve figures rather than aggregate ones.

Both *General Electric Capital Corp.,* 184 F.R.D. at 32, and *Simon,* 816 F.2d at 397, are distinguishable from the present case. The cases involved issues of notice that are not present in the current case. *Simon* involved aggregate reserve numbers found in corporate risk management documents, rather than individual reserves established by the insurer and discussed in the insurance file.

### E. Application

 In this case, the Silvas sought to compel disclosure of letters containing references to reserves and settlement authority sent between Basin Western Employees and AIG insurance adjusters. The Silvas argue that AIG's reserves and settlement authority are discoverable. Specifically, they note the discrepancy that often occurs between the amount that an insurance company is willing to offer a plaintiff to settle a case and the

reserves the company sets aside in the case. The Silvas presumably equate AIG's reserves and settlement authority with the insurance company's valuation of their case.

We are convinced that the purposes of discovery are not served by allowing discovery of reserves and settlement authority in a third-party personal injury claim such as the Silvas'. The present action is not a first-party action between the Silvas and their insurer, or even a case between Basin Western (the insured) and AIG (its insurer). Nor is it a dispute between two or more insurance companies over coverage. Rather, it is a third-party personal injury tort claim against Basin Western (the insured) by the Silvas (the allegedly injured third party). Because the relationship between the insured party and the insurer differs from the relationship between an insurance company and a party who may have been injured by the insured, the scope of discovery also differs.

█ In a first-party claim, the insurance company owes a duty to its insured to adjust a claim in good faith that the insurance company does not owe to the plaintiff in the present third-party personal injury claim. *Weitzman*, 151 F.R.D. at 126. This difference in the duty of an insurance company in a first-party claim versus a third-party claim affects our analysis of the discoverability of reserves. In a first-party claim, the establishment of reserves and settlement authority could be relevant and reasonably calculated to lead to admissible evidence regarding whether the insurance company adjusted a claim in good faith or made a prompt investigation, assessment, or settlement of a claim. *See Weitzman*, 151 F.R.D. at 126; *Savoy*, 176 F.R.D. at 12; *Lipton*, 48 Cal.App.4th at 1614, 56 Cal.Rptr.2d 341. The scope of discovery has thus been traditionally broader in first-party disputes between an insured party and his or her insurer. *Weitzman*, 151 F.R.D. at 126. Reserves have been correspondingly more likely to be found discoverable in such actions. However, AIG owes no such duty to the Silvas in the present third-party personal injury action. Consequently, reserves and settlement authority should be less subject to discovery than in bad faith or declaratory judgment actions.

The Silvas' general allegations of relevancy are insufficient to convince us that the insur-

ance reserves and settlement authority at issue are discoverable in a personal injury tort action. *See Home Ins. Co. v. Ballenger Corp.*, 74 F.R.D. 93, 101–02 (N.D.Ga.1977) (holding that general allegations of relevancy are insufficient to overcome specific objections of an adverse party to the disclosure of reserve information).

We hold that the Silvas' requests for production of reserves and settlement authority are not reasonably calculated to lead to the discovery of admissible evidence in this third-party personal injury tort claim between the Silvas and Basin Western. Consequently, the trial court erred in compelling disclosure of the reserves and settlement authority.

### IV. Attorney Fees

Basin Western also contests the trial court's award of attorney fees to the Silvas as a sanction for a discovery violation pursuant to Colo. R. Civ. P. 37. Basin Western claims the trial court abused its discretion in imposing the sanction for Basin Western's failure to produce reserve information and settlement authority. We agree. Because we find no discovery violation occurred in this case, we hold that the trial court erred in awarding attorney fees to the Silvas. We therefore make the rule absolute as to the award of attorney fees.

### V. Conclusion

We hold that the trial court erred in compelling Basin Western to produce information regarding insurance reserves and settlement authority. Such information is not reasonably calculated to lead to admissible evidence in a personal injury tort action against an insured party and is therefore not discoverable in this case. Under these circumstances, we further find the trial court abused its discretion in awarding attorney fees as a discovery sanction against Basin Western. Accordingly, the rule is made absolute, and the trial court is directed to vacate its order compelling discovery and awarding attorney fees.