1
 2024 CO 77 Marcus A. Fear, Petitioner v. GEICO Casualty Company. Respondent No. 23SC333
Supreme Court of Colorado, En Banc
December 23, 2024
 2
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA2023
 
 
          Judgment
 Affirmed
 
 
          
 Attorneys for Petitioner: Franklin D. Azar & Associates,
 P.C. DezaRae D. LaCrue Timothy L. Foster Aurora, Colorado
 
 
          
 Attorneys for Respondent: Deisch, Marion & Klaus, P.C.
 Gregory K. Falls Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Chamber of Commerce of the United
 States of America: Arnold & Porter Kaye Scholer LLP
 Robert Reeves Anderson Brian M. Williams Jake W. Murphy
 Denver, Colorado
 
 
          
 Attorneys for Amici Curiae Colorado Civil Justice League,
 American Property Casualty Insurance Association, and
 National Association of Mutual Insurance Companies: Spencer
 Fane LLP Evan Stephenson Hannah S. McCalla Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado Defense Lawyers
 Association: Walberg Law, PLLC Wendelyn Walberg Morrison,
 Colorado
 
 
           Gordon
 Rees Scully Mansukhani LLP Marilyn S. Chappell John R. Mann
 Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado Trial Lawyers
 Association: Western Slope Law Nelson A. Waneka Glenwood
 Springs, Colorado
 
 
           Jordan
 Law Michael J. Rosenberg Greenwood Village, Colorado
 
 3
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
 joined.
 
 4
 
          
 OPINION
 
 
          
 GABRIEL JUSTICE
 
 
          ¶1
 Petitioner Marcus A. Fear principally asks us to determine
 whether it is reasonable as a matter of law for an
 underinsured motorist ("UIM") insurer to refuse to
 pay non-economic damages to an insured on the ground that
 such damages are "inherently subjective" and, thus,
 are always reasonably disputed until resolution of the
 remainder of the insured's claims. In Fear's view,
 under State Farm Mutual Automobile Insurance Co. v.
 Fisher, 2018 CO 39, ¶ 3, 418 P.3d 501, 502,
 respondent GEICO Casualty Company violated section 10-3-1115,
 C.R.S. (2024), which prohibits an insurer from unreasonably
 delaying or denying payment of a covered benefit, by failing
 to pay undisputed non-economic damages before final
 settlement. We also granted certiorari to decide whether an
 insurer's internal settlement evaluation is admissible as
 evidence of undisputed "benefits owed" under
 Fisher.[1]
 
 5
 
          ¶2
 Because our analysis of the second issue informs our
 consideration of the first, we begin with the second issue
 and conclude that CRE 408 bars the admission of the kind of
 claim evaluation at issue here to show an amount of
 undisputed benefits owed. We further conclude, however, that
 the evaluation may be admissible for other purposes,
 including, for example, to establish an insurer's good or
 bad faith.
 
 
          ¶3
 Turning then to the first issue, we conclude that the court
 of appeals division below erred in determining that it is
 reasonable as a matter of law for an insurer to refuse to pay
 non-economic damages (or any portion of alleged non-economic
 damages) before resolving the rest of an insured's claim
 because such damages are inherently subjective and therefore
 are always subject to reasonable dispute under
 Fisher. In our view, it is conceivable that
 non-economic damages (or some portion of alleged non-economic
 damages) could be undisputed (or not subject to reasonable
 dispute) in a particular case, and in such a case, under
 Fisher, an insurer would be required to pay those
 damages without obtaining a release of an insured's
 entire claim. Here, however, the sole evidence advanced by
 Fear to demonstrate that a portion of his non-economic
 damages was undisputed (or not reasonably disputed) consisted
 of the claim evaluation itself, his expert's views
 thereon, and his expert's interpretation of the claim
 adjuster's not having expressly noted in the claim file
 that she disputed any particular amount of Fear's claimed
 
 6
 
 non-economic damages. This evidence, however, amounts to
 nothing more than an assertion that the claim evaluation
 proves the amount of the allegedly undisputed non-economic
 damages, which we have concluded is inappropriate under CRE
 408.
 
 
          ¶4
 Accordingly, we affirm the judgment of the division below,
 albeit in part on different grounds.
 
 
          I.
 Facts and Procedural History
 
 
          ¶5
 In 2018, Fear was involved in a rear-end collision for which
 he was not at fault. As a result of the accident, he suffered
 injuries and received medical treatment. At the time, Fear
 held a UIM policy issued by GEICO. With GEICO's
 permission, he settled with the tortfeasor's insurer for
 the tortfeasor's policy limit of $25,000. He thereafter
 sought compensation for additional damages through his UIM
 policy with GEICO.
 
 
          ¶6
 In April 2020, GEICO offered to settle Fear's UIM claim
 for $2,500, in exchange for a release of any claims relating
 to the accident. In June 2020, after Fear submitted
 documentation of additional medical bills, GEICO extended a
 new settlement offer of $4,004 to reflect the amount of those
 bills. GEICO again requested a release in exchange for any
 settlement. Fear did not accept either of these offers or
 communicate a demand for any particular amount, and GEICO
 ultimately did not make any partial payments to Fear. Fear
 then filed suit against
 
 7
 
 GEICO alleging, as pertinent here, statutory bad faith under
 section 10-3-1115 in the handling of his UIM claim.
 
 
          ¶7
 The case proceeded to a bench trial during which experts
 retained by each party disagreed about whether GEICO had
 acted reasonably in its handling of Fear's claim. The
 adjuster who had handled Fear's claim did not testify at
 trial, and the district court declined to admit her
 deposition testimony for purposes of proving the truth of any
 matters asserted therein. The court allowed the parties'
 experts, however, to rely on the adjuster's testimony as
 a basis for their opinions. The court also admitted, pursuant
 to the parties' stipulation of admissibility, GEICO's
 claim file, which included a claim evaluation summary
 prepared by GEICO in its handling of Fear's claim. This
 evaluation designated $6,500 as a "reserve"; $2,500
 as "evaluated" general damages (which both experts
 referred to as non-economic damages); and $7,243-$12,239 as a
 "negotiation range" for those general damages,
 which, when combined with Fear's medical expenses and
 then offset by the $25,000 that Fear had collected from the
 tortfeasor's insurer, resulted in a final
 "negotiation range" of $2,500-$9,000.
 
 
          ¶8
 At trial, Fear's expert opined that GEICO did not dispute
 the amount of $2,500 in April 2020 and the amount of $4,004
 in June 2020. Accordingly, in his view, GEICO had acted
 unreasonably in not paying at least those amounts. In support
 of this opinion, Fear's expert testified that in his
 experience, the $2,500 (or
 
 8
 
 later $4,004) amount in the evaluation represented the
 minimum amount that GEICO would pay or expect to pay because,
 in his view, that was the amount that GEICO believed the
 claim to be worth. On this point, he observed that he had
 seen evaluations that calculate damages as a negative number,
 and, in his view, the inclusion of a particular amount in the
 evaluation suggested, at a minimum, that GEICO did not
 dispute that number. In addition, he noted that when an
 insurance adjuster disputes a particular amount, the adjuster
 ordinarily documents in the claim file notes why the adjuster
 did so, and Fear's expert found no such note in
 Fear's claim file. Finally, Fear's expert asserted
 that although the adjuster's framing of her initial offer
 as an offer of compromise could potentially signal that she
 disputed the amount of non-economic damages, her deposition
 testimony suggested that she perceived no such dispute.
 Specifically, Fear's expert noted that the adjuster
 testified in her deposition that the lower end of the range
 in the evaluation represented the amount that GEICO would
 consider due, thus indicating that the adjuster did not
 dispute that amount.
 
 
          ¶9
 GEICO's expert did not agree that either $2,500 or $4,004
 represented an undisputed amount of non-economic damages. In
 his view, non-economic damages are inherently disputed, and
 neither the Fisher court nor any other court had
 required that an insurer make partial payments of any alleged
 non-economic damages. The expert further opined that an
 insurer's evaluation as to
 
 9
 
 non-economic damages does not constitute an admission as to
 the amount of those damages because it is a settlement
 evaluation, not an objective evaluation of a claim. An
 objective evaluation of a claim occurs, the expert asserted,
 only when the parties agree to a value or a court or
 arbitrator determines that value. And in the expert's
 experience, the range for non-economic damages in an
 evaluation is often based on settlement amounts in other
 cases, as opposed to a mathematically precise calculation in
 the present case.
 
 
          ¶10
 At the conclusion of the bench trial, the district court
 concluded that Fisher's holding extends to
 undisputed non-economic damages. The court then found that
 $3,961 of Fear's non-economic damages was undisputed (the
 court arrived at this number by subtracting the $25,000 paid
 by the tortfeasor's insurer from the $28,961 that the
 court determined to be the undisputed total of Fear's
 economic and non-economic damages). The court stated that in
 reaching this conclusion, it had disregarded GEICO's
 settlement offers and "settlement range," which the
 court deemed to be distinct from the "evaluation
 range" that the court found to be probative of
 GEICO's understanding of the actual value of Fear's
 claim. The court thus determined that GEICO had violated
 section 10-3-1115.
 
 
          ¶11
 GEICO appealed, and in a unanimous, published decision, a
 division of the court of appeals reversed. Fear v. GEICO
 Cas. Co., 2023 COA 31, ¶¶ 2, 23, 532 P.3d 382,
 383, 387. The division concluded that, for two reasons, the
 district court had
 
 10
 
 erred in relying on GEICO's claim evaluation as evidence
 of an amount of undisputed benefits owed. Id. at
 ¶ 18, 532 P.3d at 386. First, in the division's
 view, non-economic damages are "inherently
 subjective," and insurers estimate them in internal
 evaluations for the limited purpose of determining reserves
 and settlement authority, not to confine the factfinder to a
 particular damages range. Id. at ¶ 19, 532 P.3d
 at 386. Second, the division opined that admitting the claim
 evaluation as evidence of an amount of undisputed damages
 would violate CRE 408 because, although the evaluation itself
 was not a settlement offer, it was "inextricably
 intertwined" with such an offer, thus explaining why the
 settlement offer matched the internal evaluation range
 exactly. Id. at ¶ 20, 532 P.3d at 386. On this
 point, the division noted that it would be absurd to protect
 the end result of the insurer's initial evaluation
 process (i.e., a settlement offer) without also protecting
 the assessments that gave rise to that offer. Id.
 
 
          ¶12
 In reaching its conclusion, the division was unpersuaded by
 dicta in Sunahara v. State Farm Mutual Automobile
 Insurance Co., 2012 CO 30M, ¶ 29, 280 P.3d 649,
 657, that stated that the kind of evaluation at issue could
 be relevant in a bad faith action to indicate whether the
 insurer had adjusted a claim in good faith. Fear,
 ¶ 21, 532 P.3d at 387. In the division's view,
 because the evaluation could not show an amount of undisputed
 benefits owed, it could have no relevance to whether the
 insurer unreasonably delayed payment of a covered
 
 11
 
 benefit. Id. And because the district court's
 ruling depended heavily on the claim evaluation, the error in
 admitting that evaluation was not harmless. Id. at
 ¶ 22, 532 P.3d at 387.
 
 
          ¶13
 Fear then petitioned this court for a writ of certiorari, and
 we granted his petition.
 
 
          II.
 Analysis
 
 
          ¶14
 We begin by setting forth the applicable standard of review.
 Because our analysis of the second issue on which we granted
 certiorari informs our consideration of the first, we then
 address the second issue before proceeding to the first.
 
 
          A.
 Standard of Review
 
 
          ¶15
 We review a trial court's factual findings for clear
 error and its legal conclusions de novo. Martinez v.
 People, 2024 CO 6M, ¶ 24, 542 P.3d 675, 681. The
 reasonableness of an insurer's conduct must be determined
 objectively, based on industry standards. Goodson v. Am.
 Standard Ins. Co. of Wis., 89 P.3d 409, 415 (Colo.
 2004). What constitutes reasonableness under the
 circumstances of a given case is generally a factual question
 for the jury. Zolman v. Pinnacol Assurance, 261 P.3d
 490, 497 (Colo.App. 2011). When, however, no genuine issue of
 material fact exists, the question of reasonableness may be
 decided as a matter of law. Id.
 
 12
 
          B.
 Admissibility of the Claim Evaluation
 
 
          ¶16
 Fear contends that the division erred in concluding that CRE
 408 precludes admission of the claim evaluation here to show
 both undisputed benefits owed and good or bad faith. We agree
 with the division that CRE 408 bars the admission of the
 claim evaluation to show undisputed benefits owed, but we do
 not agree with the division's further conclusion that, as
 a matter of law, CRE 408 also bars the admission of the claim
 evaluation to show an insurer's good or bad faith.
 
 
          ¶17
 CRE 408 provides, in pertinent part:
 
 
 (a) Prohibited Uses. Evidence of the following is not
 admissible on behalf of any party, when offered to prove
 liability for, invalidity of, or amount of a claim that was
 disputed as to validity or amount . . .:
 
 
 (1) furnishing or offering or promising to furnish accepting
 or offering or promising to accept a valuable consideration
 in compromising or attempting to compromise the claim; and
 
 
 (2) conduct or statements made in compromise negotiations
 regarding the claim ....
 
 
 (b) Permitted Uses. This rule does not require exclusion if
 the evidence is offered for purposes not prohibited by
 subdivision (a). Examples of permissible purposes include
 proving a witness's bias or prejudice; negating a
 contention of undue delay; and proving an effort to
 obstruct a criminal investigation or prosecution.
 
 
 (Emphasis added.)
 
 
          ¶18
 We have previously analyzed whether reserves, settlement
 authority, and internal evaluations like the claim evaluation
 at issue here are discoverable, and
 
 13
 
 we believe that the reasoning of those decisions sheds light
 on the admissibility question now before us.
 
 
          ¶19
 In Silva v. Basin Western, Inc., 47 P.3d 1184, 1193
 (Colo. 2002), we concluded that in a first-party claim
 between an insured and their insurer, the establishment of
 reserves and settlement authority could be relevant and
 discoverable as to whether an insurer adjusted a claim in
 good faith or properly investigated, assessed, or settled a
 claim. We noted, however, that reserves and settlement
 authority are less likely to be discoverable in third-party
 actions. Id. In reaching this conclusion, we
 observed that reserves, which we defined as funds an insurer
 sets aside to cover future expenses, losses, claims, or
 liabilities, should not be equated with an admission or
 valuation by the insurer. Id. at 1189. This is
 because insurers are statutorily required to maintain
 reserves to assure the insurer's ability to satisfy its
 possible obligations under its policies. Id.
 Specifically, insurers are required to make a reasonable
 estimate of the amount necessary to pay losses and claims for
 which the insurer may be liable. Id. Reserves must
 also account for any claim expenses, including attorney fees
 and court costs. Id.
 
 
          ¶20
 Turning then to the question of an insurer's settlement
 authority, we concluded that such authority, like reserves,
 also cannot be equated with the value of a claim because
 settlement authority generally refers to an agent's
 ability to accept a settlement offer that binds the insurer
 up to and including a particular
 
 14
 
 amount. Id. In light of the foregoing, we concluded,
 "Neither reserves nor settlement authority reflect an
 admission by the insurance company that a claim is worth a
 particular amount of money." Id. at 1190.
 Rather, "[s]tatutory requirements, limitations in the
 evaluation, and bargaining tactics limit the usefulness of
 reserves and settlement authority as valuations of a
 claim." Id.
 
 
          ¶21
 Subsequently, in Sunahara, ¶ 25, 280 P.3d at
 657, we extended our reasoning in Silva to cover
 liability assessments and "similar cursory fault
 evaluations" used by insurers to develop reserves and
 settlement authority. There, we agreed with the trial court
 that insurance companies must be free to make internal
 assessments that bear on the insurer's reserve decisions.
 Id. We further agreed with the trial court that
 "it would be absurd to protect the end result of the
 insurance company's initial evaluation process-the
 reserves and settlement authority-without also protecting the
 assessments that led to those numbers." Id.
 Accordingly, we concluded that these evaluations, like the
 reserves and settlement authority that they underlie, were
 not discoverable. Id. We again added, however, that
 reserves and settlement authority might be discoverable when
 a first-party plaintiff sues an insurance company for bad
 faith or declaratory relief. Id. at ¶ 29, 280
 P.3d at 657.
 
 
          ¶22
 In our view, the same reasoning that protected the claim
 evaluations from discovery in Silva and
 Sunahara applies to the admissibility of those
 evaluations. As noted above, CRE 408(a) bars the admission of
 settlement offers as proof of the
 
 15
 
 amount of a disputed claim. Although the rule does not refer
 to the evaluations underlying a party's settlement
 offers, for the reasons set forth in Silva and
 Sunahara, because these evaluations often underlie
 the determination of a party's settlement offers,
 allowing their admission would circumvent the rule's bar
 on the admission of settlement offers to prove the amount of
 a disputed claim, thus undermining the rule in many insurance
 cases. Stated otherwise, in the same way that it would be
 absurd to bar the discovery of reserves and settlement
 authority but not the evaluations that led to them,
 Sunahara, ¶ 25, 280 P.3d at 657, it would be
 absurd to bar the admission of settlement offers proffered to
 establish the amount of a disputed claim but not the
 evaluations from which those settlement offers were
 developed.
 
 
          ¶23
 Accordingly, we agree with the conclusion of the division
 below that an insurer's internal settlement evaluation is
 inadmissible as evidence of undisputed benefits owed.
 Consistent with our reasoning in both Silva and
 Sunahara, however, and contrary to the
 division's determination below, Fear, ¶ 21,
 532 P.3d at 387, we further conclude that CRE 408 does not
 prohibit the use of documents like the claim evaluation at
 issue here for purposes not prohibited by CRE 408(a). Indeed,
 CRE 408(b) expressly includes as an example of a permitted
 use of such evidence "negating a contention of undue
 delay," which is an essential issue in a statutory bad
 faith claim.
 
 16
 
          ¶24
 Because the district court admitted the claim evaluation for
 a prohibited purpose, we agree with the division below that
 that decision must be reversed.
 
 
          C.
 Non-Economic Damages Under Fisher
 
 
          ¶25
 Having thus concluded that the district court erred in
 admitting the claim evaluation, we proceed to consider
 Fear's assertion that the division erred in concluding,
 as a matter of law, that a UIM carrier acts reasonably in not
 advancing non-economic damages because such damages are
 inherently subjective. According to Fear, Fisher
 requires that insurers pay undisputed damages and not
 condition that payment on a release covering the claim in its
 entirety. Fear further asserts that although non-economic
 damages may be more difficult to quantify than economic
 damages, some amount of non-economic damages may be
 undisputed in a given case.
 
 
          ¶26
 We agree with Fear that the division below erred in
 determining that it is reasonable as a matter of law for an
 insurer to refuse to pay non-economic damages (or any portion
 of alleged non-economic damages) before resolving the rest of
 an insured's claim because such damages are inherently
 subjective and therefore are always subject to reasonable
 dispute under Fisher. We nonetheless conclude that
 the division reached the correct result on the facts of this
 case.
 
 
          ¶27
 Section 10-3-1115(1)(a) provides, "A person engaged in
 the business of insurance shall not unreasonably delay or
 deny payment of a claim for benefits
 
 17
 
 owed to or on behalf of any first-party claimant."
 Section 10-3-1115(2) adds that "an insurer's delay
 or denial was unreasonable if the insurer delayed or denied
 authorizing payment of a covered benefit without a reasonable
 basis for that action." And section 10-3-1116(1), C.R.S.
 (2024), in turn, authorizes first-party claimants who have
 had their insurers unreasonably delay or deny payment of
 benefits to bring an action to recover reasonable attorney
 fees, court costs, and two times the covered benefit.
 
 
          ¶28
 We recently construed these provisions in Fisher.
 There, the insurer conceded that the claimant's medical
 bills were reasonable, necessary, and causally related to the
 accident at issue but refused to pay those medical bills
 while the parties disputed the remainder of Fisher's
 claim. Fisher, ¶¶ 6-7, 418 P.3d at 503.
 Because section 10-3-1115 refers to the unreasonable delay or
 denial of payment of a "covered benefit," as
 opposed to an entire claim, we concluded that the statute
 required the insurer to pay the covered benefit (there, the
 undisputed medical expenses), even while other portions of
 the insured's claim remained reasonably in dispute.
 Id. at ¶¶ 3, 15-22, 418 P.3d at 502,
 504-05.
 
 
          ¶29
 To decide the issue now before us, we must first determine
 whether Fisher, which, as noted, involved undisputed
 medical expenses, applies as well to undisputed non-economic
 damages. Contrary to the reasoning of the division below,
 see Fear, ¶¶ 18-22, 532 P.3d at 386-87, we
 conclude that it does, although
 
 18
 
 we recognize that the difficulties and subjectivity involved
 in calculating non-economic damages may impact whether the
 non-economic damages in a given case are undisputed or
 reasonably disputable. We reach this conclusion for two
 reasons.
 
 
          ¶30
 First, Fisher's reasoning extends beyond only
 medical expenses. Specifically, section 10-3-1115 applies to
 any "covered benefit," which, as we reasoned in
 Fisher, ¶¶ 16-22, 418 P.3d at 504-05, can
 be a component of an insurance bad faith claim, as opposed to
 the entire claim itself. Moreover, many insurance policies,
 including the UIM policy at issue here, cover non-economic
 damages. In such cases, non-economic damages constitute a
 covered benefit, and, thus, Fisher's reasoning
 applies to such damages.
 
 
          ¶31
 Second, Fisher's reasoning extends beyond those
 expenses that an insurer explicitly concedes as
 undisputed. As noted above, section 10-3-1115 prohibits an
 insurer from delaying or denying payment of a covered benefit
 "without a reasonable basis." In determining
 whether an insurer acted reasonably, then, courts must
 consider, among other things, whether a reasonable person
 would find that the insurer's justification for delaying
 or denying payment was "fairly debatable."
 Schultz v. GEICO Cas. Co., 2018 CO 87, ¶ 20,
 429 P.3d 844, 848 (clarifying, however, that fair
 debatability is neither an outcome-determinative threshold
 inquiry nor the beginning and end of the analysis in a bad
 faith case).
 
 19
 
          Furthermore,
 although a genuine difference of opinion regarding the value
 of an insurance claim may weigh against a finding of bad
 faith, a valuation dispute alone does not render a claim
 fairly debatable because virtually every lawsuit involving
 insurance coverage constitutes a valuation dispute, at least
 to the extent that the parties disagree about how much should
 be paid under a policy. Vaccaro v. Am. Fam. Ins.
 Grp., 2012 COA 9M, ¶ 47, 275 P.3d 750, 760.
 Accordingly, insurers may not shield themselves from
 liability simply by disputing the value of a particular
 benefit; the dispute must have a reasonable basis.
 
 
          ¶32
 Applying these principles to the question before us, we
 conclude that circumstances may exist in which section
 10-3-1115 requires an insurer to pay some or all of an
 insured's alleged non-economic damages prior to final
 resolution of a claim. Although, as GEICO argues,
 non-economic damages tend to involve greater subjectivity
 than other types of damages like medical expenses and, as a
 result, it may well be a rare case in which non-economic
 damages are not reasonably disputable, we decline to
 conclude, as a matter of law, that such damages (or a portion
 thereof) can never be undisputed or free from
 reasonable dispute such that Fisher would require an
 insurer to pay them.
 
 
          ¶33
 The question thus becomes whether Fear has proffered any
 admissible evidence to support his claim that some portion of
 his claimed non-economic
 
 20
 
 damages were either undisputed or not subject to reasonable
 dispute in this case. We conclude that he has not done so.
 
 
          ¶34
 As noted above, the sole evidence advanced by Fear to
 demonstrate that his claim for non-economic damages (or a
 portion of that claim) was either undisputed or not subject
 to reasonable dispute consisted of the claim evaluation
 itself, his expert's opinion as to what the numbers in
 that evaluation meant (relying, in part, on the
 adjuster's deposition testimony as to her understanding
 of the evaluation), and the expert's interpretation of
 the adjuster's not having expressly noted in the claim
 file that she disputed any particular amount of Fear's
 claimed non-economic damages. In our view, however, this
 evidence amounts to nothing more than an assertion that the
 claim evaluation proves the amount of the allegedly
 undisputed non-economic damages, which is precisely what we
 have determined is inappropriate under CRE 408.
 
 
          ¶35
 Accordingly, we conclude that although the division below
 erred in determining that it is reasonable as a matter of law
 for an insurer to refuse to pay non-economic damages (or any
 portion of alleged non-economic damages) under
 Fisher, it nonetheless reached the correct result
 because Fear has not carried his burden of establishing,
 through admissible evidence, that any portion of his alleged
 non-economic damages was either undisputed or not subject to
 reasonable dispute.
 
 21
 
          III.
 Conclusion
 
 
          ¶36
 For these reasons, we conclude that CRE 408 bars the
 admission of the kind of claim evaluation at issue here as
 evidence of the amount of undisputed benefits owed, but such
 a claim evaluation may be admissible for other purposes,
 including to seek to establish an insurer's good or bad
 faith. We further conclude that Fisher and section
 10-3-1115 require an insurer to pay non-economic damages (or
 a portion thereof) prior to resolving the rest of an
 insured's claim when such damages are undisputed or not
 subject to reasonable dispute. Here, however, Fear has not
 carried his burden of establishing, through admissible
 evidence, that any portion of his claimed non-economic
 damages was either undisputed or not subject to reasonable
 dispute.
 
 
          ¶37
 Accordingly, we affirm the judgment of the division below,
 albeit in part on different grounds.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, we granted certiorari to
 review the following issues:
 
 
 1. Whether it is reasonable as a matter of law for an
 uninsured/underinsured motorist ("UIM") insurance
 carrier to refuse to pay non-economic damages because such
 damages are "inherently subjective" and because the
 insurer attempted to negotiate a full and final settlement of
 the insured's claim.
 
 
 2. Whether an insurer's internal settlement
 evaluation is admissible as evidence of undisputed
 "benefits owed" under State Farm Mutual Auto
 Ins. Co. v. Fisher, 2018 CO 39, 418 P.3d 501.
 
 
 ---------