# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Therese Hood, Petitioner,

v.

United Services Auto Association, Respondent.

Appellate Case No. 2023-000423

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Charleston County
Kristi F. Curtis, Circuit Court Judge

———————

Opinion No. 28249
Heard October 29, 2024 – Filed January 8, 2025

———————

## AFFIRMED

———————

Roy T. Willey, IV, Eric Marc Poulin, and Lane Douglas
Jefferies, all of Poulin Willey Anastopoulo, LLC, of
Charleston, for Petitioner.

Robert William Whelan, of Whelan, Mellen & Norris,
LLC, of Charleston, for Respondent.

———————

**JUSTICE VERDIN:**  Therese Hood brought this action against her underinsured motorist (UIM) carrier, United Services Automobile Association (USAA), asserting claims for both negligence and bad faith, among others.  Following the jury's verdict in favor of USAA on the bad faith claim and in favor of Hood on her negligence claim, the trial court granted USAA's motion for JNOV on the negligence claim.  Hood appealed to the court of appeals, which affirmed.  We granted certiorari on two issues: (1) whether a first-party insured can bring both a negligence and bad faith claim against their UIM insurer; and (2) whether the court of appeals erred in holding USAA did not act in bad faith during settlement negotiations of Hood's UIM claim or in taking a disparate position on a key factual issue in two underlying tort actions.  We find Hood's arguments entirely without merit and affirm.

## I.      FACTUAL AND PROCEDURAL HISTORY

On November 7, 2014, Therese Hood was in a three-car accident.  In that accident, Hood was t-boned by Antonie Johnson, causing Hood to move into oncoming traffic and hit William and Mary Kuck head-on.  As a result, three lawsuits began.

The Kucks sued Johnson and Hood (Kuck Action) to recover damages from the accident.  As her liability insurer, USAA provided Hood with counsel.  The main issue concerning Hood's liability was whether she had her headlights on at the time of the accident.  Hood argued that they were on, providing testimony that her headlights were on auto and expert testimony that a lamp filament test showed her high beams were on at the time of the accident.  The Kucks and Johnson argued that they were off, providing five eyewitnesses' testimony and the accident's police report as evidence.

Hood sued Johnson for her damages in the accident.  After Johnson's insurance company paid its policy limits, USAA stepped into Johnson's shoes and defended the suit under Hood's UIM policy (UIM Action).  Hood's UIM limits in her USAA policy were $1,000,000.  Before trial, USAA and Hood mediated the claim, but they failed to settle as USAA's highest offer was $200,000, and Hood's lowest official offer was $600,000.  At the end of mediation, USAA's counsel stated that $200,000 was the extent of his authority, though USAA gave its counsel authority of $250,000.  Hood did not take the $200,000 offer, and the case proceeded to trial.  At trial, Hood and USAA stipulated that Hood's headlights were off, but Hood argued her headlights did not have to be on at the time of the accident because it was not yet dark.  In the end, Hood won this suit with the jury finding her 49% at

fault.  Even with a 49% reduction, the jury verdict exceeded Hood's $1,000,000 UIM limits.  USAA then paid that sum to Hood.

While the UIM Action was still pending, Hood brought the third lawsuit against USAA, alleging bad faith, negligence, breach of contract, negligence per se, barratry, and outrage, alleging USAA took disparate positions on Hood's headlight use in the UIM Action than in the Kuck Action, did not offer its full settlement authority during mediation, and acted aggressively toward Hood during mediation of the UIM Action.  Hood claimed she would have settled the UIM Action for $250,000 had USAA offered that sum.  She claimed damages in the form of emotional distress caused by USAA's treatment of her during the UIM Action.  She also claimed she incurred costs of $49,042.20 to prosecute the UIM Action, which she would not have incurred had USAA offered $250,000.[1]

Before trial, the court granted USAA summary judgment on (1) the barratry cause of action because no evidence supported the claim; (2) the outrage cause of action because the conduct did not rise to the level of outrage; (3) the breach of contract cause of action because the award had been paid and the UIM limits tendered; and (4) the negligence per se cause of action.  During trial, USAA made a directed verdict motion on the remaining causes of action, which the trial court granted in part.  It held Hood was not entitled to excess verdict damages, that the jury could not consider USAA's conduct during mediation because USAA did not have a duty to offer the full amount of its settlement authority, and there was insufficient evidence of emotional distress.  Thus, the court submitted only the claims of bad faith and negligence to the jury.  The jury returned a verdict finding for USAA on the bad faith claim and for Hood on her negligence claim, awarding her compensatory damages of $49,042.20 and punitive damages of $250,000.  USAA moved for JNOV, arguing a first-party insured could only bring a bad faith claim, not a negligence claim.  The trial court granted that motion.

The court of appeals affirmed the trial court's decision, holding that a first-party insured has no separate cause of action in negligence under the duty of good faith and fair dealing.  *Hood v. United Servs. Auto. Ass'n*, Op. No. 2023-UP-011 (Ct. App. 2023).  The court of appeals also held Hood waived her challenges to the trial court's rulings on USAA's summary judgment and directed

---

[1] Hood has no logical explanation of how she sustained actual damages, as she ended up receiving a verdict in the UIM Action for which USAA paid her $1,000,000, an amount far greater than the $250,000 for which she claims she would have settled.

verdict motions because she failed to present these issues to the trial court in her post-trial motions. It also held that as an additional sustaining ground, no reasonable jury could find USAA acted in bad faith, explaining that USAA had no duty to offer its full reserves or settlement authority during mediation of the UIM Action and there was no evidence of USAA taking disparate positions as to Hood's headlights in the Kuck Action and the UIM Action. Hood filed a petition for rehearing, which the court of appeals denied. Hood then petitioned this Court for a writ of certiorari, which we granted in part.

## II. Discussion

### A. Bad Faith and Negligence Claims

Hood argues that our courts have recognized a negligence claim distinct from bad faith, so the jury's finding that USAA was negligent but did not act in bad faith should be upheld.[2] We disagree.

Whether a cause of action exists is a question of law that we review de novo. *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000). South Carolina has never recognized a negligence claim between an insured and insurer and will not now.

We have long distinguished between a party's contract and tort liability. *See, e.g.*, *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 379 S.C. 181, 187, 666 S.E.2d 247, 250 (2008) ("The purpose of the economic loss rule is to define the line between tort and contract recovery."), *overruled on other grounds by Sapp v. Ford Motor Co.*, 386 S.C. 143, 687 S.E.2d 47 (2009). Where a contract exists, claims within the contract's scope must be brought under contract law. *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 54–55, 463 S.E.2d 85, 88 (1995) ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.").

We have, however, found a special relationship where "the parties have entered into a mutually binding contract for insurance." *Pitts v. Jackson Nat'l Life Ins.*, 352 S.C. 319, 330, 574 S.E.2d 502, 507 (Ct. App. 2002). Due to this special relationship, a duty of good faith and fair dealing exists by operation of law,

---

[2] We note that Hood's arguments have shifted at every step of this litigation.

allowing plaintiffs to bring a tort claim for breach of that duty against their insurer. *Id.* at 330–31, 574 S.E.2d at 507; *Tadlock Painting Co. v. Maryland Cas. Co.*, 322 S.C. 498, 503, 473 S.E.2d 52, 55 (1996). Under the duty of good faith and fair dealing, an insured can collect consequential damages by showing "bad faith or unreasonable action by the insurer in processing a claim" and punitive damages by showing "the insurer's actions were willful or in reckless disregard of the insured's rights." *Nichols v. State Farm Mut. Auto. Ins.*, 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983). The elements of a bad faith claim for failure to pay first-party benefits are

> (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Howard v. State Farm Mut. Auto. Ins.*, 316 S.C. 445, 451, 450 S.E.2d 582, 586 (1994).

In South Carolina's seminal bad faith case, *Tyger River Pine Co. v. Maryland Cas. Co.*, an employee sued his employer, Tyger River Pine Company (Tyger River), for injuries he sustained while working in the lumber mill. 170 S.C. 286, 287, 170 S.E. 346, 346 (1933). Both Tyger River and the employee would have settled the claim for Tyger River's insurance policy limits, but Tyger River's insurance company, Maryland Casualty Company, refused. *Id.* at 293, 170 S.E. at 348. Tyger River sued the insurer, asserting it "negligently, recklessly, willfully, contumaciously, and in bad faith . . . refused to settle the claim." *Id.* at 289, 170 S.E. at 347. This court affirmed the jury's findings of negligence and bad faith, and held that an insurer had the duty to settle a claim "if that was the reasonable thing to do." *Id.* at 294, 170 S.E. at 349. This holding, which only applied to third-party insureds, became known as the *Tyger River* Doctrine—a claim in itself, not a negligence claim. *Id.*; *Nichols*, 279 S.C. at 339–40, 306 S.E.2d at 619. This doctrine was also the underpinning for creating the bad faith claim for first-party insureds in *Nichols*.

In *Nichols*, we expanded the *Tyger River* Doctrine to first-party insureds. *Nichols*, 279 S.C. at 340, 306 S.E.2d at 619. In doing so, *Nichols* clarified the use of the word "negligence" in *Tyger River*. *Nichols* noted that the *Tyger River* Doctrine and

the bad faith cause of action "are merely two different aspects of the same duty." *Id.* at 339–40, 306 S.E.2d at 619. *Nichols* then stated that under the "bad faith cause of action . . . the jury is entitled to consider negligence on the issue of unreasonable refusal to pay benefits," or that negligence acts as evidence in a bad faith claim. *Id.* at 342, 306 S.E.2d at 620. At bottom, *Tyger River* may have mentioned negligence, but *Nichols* held that bad faith is the insured's only tort cause of action and only applied to a bad faith refusal to pay benefits.

In the years after *Nichols*, we have reaffirmed the bad faith claim for first-party insureds and expanded it in a limited way. *See Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 7–8, 437 S.E.2d 6, 9–10 (1993) (confirming that bad faith is a tort action and overruling previous cases that suggested otherwise); *Howard*, 316 S.C. at 451, 450 S.E.2d at 586 (reaffirming the elements of a bad faith refusal to pay first-party benefits under an insurance contract); *Kleckley v. Nw. Nat'l Cas. Co.*, 338 S.C. 131, 134, 526 S.E.2d 218, 219 (2000) (reaffirming that a bad faith claim for "refusal to pay benefits does not extend to third parties who are not named insureds"); *Mixson, Inc. v. American Loyalty Ins.*, 349 S.C. 394, 400, 562 S.E.2d 659, 662 (2002) (expanding a bad faith claim to include not just nonpayment of a legitimate claim but how that claim was processed (citing *Tadlock Painting Co v. Maryland Cas. Co.*, 322 S.C. 498, 473 S.E.2d 52 (1996))); *In re Mt. Hawley Ins.*, 427 S.C. 159, 169, 829 S.E.2d 707, 713 (2019) (highlighting the importance of a bad faith claim in advantaging citizens when dealing with the insurance industry). These cases did not change *Nichols'* fundamental holding.

In contrast, courts in this state have not allowed a negligence claim to enforce the duty of good faith and fair dealing. In fact, the district courts specifically have rejected a freestanding negligence claim as being duplicative of a bad faith claim. *See, e.g.*, *Skinner v. Horace Mann Ins.*, 369 F. Supp. 3d 649, 654 (D.S.C. 2019) (dismissing an insured's negligence claim because it was duplicative of the bad faith claim and noting unpublished district court opinions with similar findings).[3]

As the district court noted, a freestanding negligence claim would be duplicative of a bad faith claim. "To state a cause of action for negligence the plaintiff must allege facts which demonstrate the concurrence of three elements: (1) a duty of care owed by the defendant; (2) a breach of that duty by negligent act or omission; and (3) damage proximately caused by the breach." *Kleckley*, 338 S.C. at 138, 526

---

[3] The same law firm that represents Hood here represented the plaintiff in *Skinner* in her unsuccessful attempt to assert a negligence claim as well as a bad faith claim.

S.E.2d at 221. "Without a duty, there is no actionable negligence." *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 846 (2011). Hood fails to call this Court's attention to any duty USAA owed her other than contractual duties, the breach of which would be addressed by a contract action, and the duty of good faith and fair dealing, the breach of which is addressed by a bad faith claim. *Tommy L. Griffin Plumbing & Heating Co.*, 320 S.C. at 54–55, 463 S.E.2d at 88 ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.").

Furthermore, South Carolina's case law contemplates negligence as merely evidence for a bad faith claim. *See Nichols*, 279 S.C. at 342, 306 S.E.2d at 620 (holding the jury was entitled to consider negligence on the issue of unreasonable refusal to pay benefits). At its core, negligence law is grounded in reasonableness. *See Hart v. Doe*, 261 S.C. 116, 122, 198 S.E.2d 526, 529 (1973) (defining negligence as "the failure to use due care," i.e., "that degree of care which a person of ordinary prudence and *reason* would exercise under the same circumstances" (emphasis added)). We have also stated that an insured can show a breach of the duty of good faith and fair dealing through evidence of "bad faith or unreasonable action." *Nichols*, 279 S.C. at 340, 306 S.E.2d at 619. However, our invoking reasonableness when establishing the duty of good faith and fair dealing only sets the evidence available to prove that duty's breach, not that negligence is another claim parties may use to enforce it. *Id.*; *see Cock-N-Bull Steak House, Inc. v. Generali Ins.*, 321 S.C. 1, 6, 466 S.E.2d 727, 730 (1996) ("An insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." (quoting *Dowling v. Home Buyers Warranty Corp., II*, 303 S.C. 295, 297, 400 S.E.2d 143, 144 (1991))).

Here, all of Hood's claims focus on (1) how USAA represented Hood in the Kuck Action against Hood and how it represented its own interests against Hood in the UIM Action; (2) how USAA's representatives treated Hood during mediation of the UIM Action; and (3) whether USAA breached its internal policies for litigation and mediation. All of these acts stem from the insurance contract. Thus, all these arguments fall under Hood's contract's scope and lead to one viable tort claim: bad faith. A negligence action would be entirely duplicative of that claim. *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012) (holding a breach of fiduciary duty claim was duplicative of a legal malpractice claim because a client's claim for breach of fiduciary duty arose out of

the duty inherent in the attorney-client relationship and the same factual allegations and therefore failed as a matter of law).

Hood also argues that a negligence claim must be available within an insurance contract's scope because those seeking insurance but not yet under contract have that protection. Hood relies on *Hinds v. United Ins. Co. of America*, 248 S.C. 285, 149 S.E.2d 771 (1966), which is easily distinguishable because it did not deal with validly contracted parties but involved a negligent procurement claim and its accompanying duties. *See also Orangeburg Sausage Co. v. Cincinnati Ins.*, 316 S.C. 331, 334 n.1, 450 S.E.2d 66, 68 n.1 (Ct. App. 1994) (finding negligence damages available from a negligent procurement claim that arose before contract formation, and bad faith damages available for harm suffered after contract formation). We have recognized that "where an insurance agent or broker, with a view toward being compensated, undertakes to procure insurance for a member of the public, the law holds the agent or broker to the exercise of good faith, and reasonable skill, care and diligence in performing the obligation." *Riddle-Duckworth, Inc. v. Sullivan*, 253 S.C. 411, 421, 171 S.E.2d 486, 490 (1969). Thus, a negligent procurement case involves a separate and distinct duty of care from a bad faith claim, which is based on the duty of good faith and fair dealing.

We do not disagree with Hood's assertion that because "[t]he insurance business is affected with a public interest," an insured party has to at least have the same level of protection as those seeking insurance. *Nichols*, 279 S.C. at 340, 306 S.E.2d at 619. However, insureds obtain that level of protection through a bad faith claim. Another claim covering those same actions would not provide more protections for those individuals.

In sum, we take this opportunity to clarify what was already clear: the only claims available to the insured under an insurance contract are contract and bad faith claims.

### B. Bad Faith as an Additional Sustaining Ground

Hood argues the court of appeals erred in holding as an additional sustaining ground that USAA did not act in bad faith. First, the court of appeals stated it was "not aware of any authority supporting the proposition that an insurance company acts in bad faith by not offering to settle the case for the full amount of its authority or reserve." Second, it found that USAA did not take a disparate position on Hood's headlight use in the UIM action as it did in the Kuck Action, noting USAA was only a party to the UIM Action, where it had a right to protect its interests, and

was not a party to the Kuck Action. Hood argues that these additional sustaining holdings were error because a jury could have found that USAA lied about its reserves and settlement authority during mediation and did take disparate positions on Hood's headlights in the two cases. These arguments, too, are utterly meritless.

As for Hood's first contention concerning USAA's attorney's conduct during mediation of the UIM Action, Hood cites no authority to support her argument that USAA acted in bad faith in failing to disclose its reserves or settlement authority to Hood.[4] *See Transp. Ins. & Flagstar Corp. v. S.C. Second Inj. Fund*, 389 S.C. 422, 432, 699 S.E.2d 687, 692 (2010) (finding an issue abandoned on appeal partly because the party cited no authority to support its argument). In contrast, our bad faith precedent has never required an insurance company to disclose or offer its reserves or full settlement authority to an insured, only that the insurance company act in good faith in paying an uncontested claim and in claim processing. *See* supra Section II.A (discussing the history of bad faith claims in South Carolina).

Once Johnson settled with Hood, USAA was allowed to step into Johnson's shoes to litigate the UIM Action for its own benefit; it was not required to simply hand over the UIM policy limits to Hood. *See* S.C. Code Ann. § 38-77-160 (2015) (providing an underinsured motorist (UIM) carrier "has the right to appear and defend in the name of the [UIM] in any action which may affect its liability"); *Williams v. Selective Ins.*, 315 S.C. 532, 534, 446 S.E.2d 402, 404 (1994) ("[T]he intent of § 38-77-160 is to protect the insurance carrier's right to contest its liability for underinsured benefits."); *Crawford v. Henderson*, 356 S.C. 389, 398, 589 S.E.2d 204, 209 (Ct. App. 2003) ("[O]nce the named defendant has settled for his liability policy limits, he no longer has a stake in the outcome of the litigation. The UIM carrier, on the other hand, still has a viable, financial interest in the case. As a result, the attorney for the UIM carrier represents the carrier and not the named defendant."). USAA acted within its rights under the UIM policy in not disclosing its reserves or authority and as any other party would be expected to act in the adversarial process.

Other jurisdictions have found that an insurer does not have to disclose its reserves or settlement authority, even as discovery in a bad faith action, because this information does not "reflect an admission by the insurance company that a claim

---

[4] A carrier's reserve and the settlement authority given to the representative of the carrier (an attorney or an adjuster, for example) are typically different sums, but here, USAA's reserve and settlement authority were the same, $250,000.

is worth a particular amount of money." *Silva v. Basin W., Inc.*, 47 P.3d 1184, 1190 (Colo. 2002) (en banc). In insurance law, "reserves" are "the funds insurance companies set aside to cover future expenses, losses, claims, or liabilities." *Id.* at 1189 (citing *Black's Law Dictionary* 1307 (6th Ed. 1990)). The Colorado Supreme Court defined "settlement authority" as "an agent's ability to accept an offer of settlement that binds the principal up to and including a certain amount of money." *Id.* It explained that an insurer's loss reserves were not the same as settlement authority as the "main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately as possible, the insured's *potential* liability." *Id.* (quoting *Lipton v. Superior Ct.*, 56 Cal. Rptr. 2d 341, 349 (1 Cal. Ct. App. 1996); *See, e.g.*, S.C. Code Ann. § 38-9-180 (2015) (setting forth the methods for insurers to calculate reserve amounts). The Colorado court noted that a reserve amount "does not automatically authorize a settlement at that figure." *Silva*, 47 P.3d at 1189 (quoting *Lipton*, 56 Cal. Rptr. at 349). It also explained, "[s]tatutory requirements, limitations in the evaluation, and bargaining tactics limit the usefulness of reserves and settlement authority as valuations of a claim." *Id.* at 1190.

Similarly, the Tenth Circuit held "[c]ompromise or settlement offers are not admissions of liability." *Signature Dev. Cos. v. Royal Ins. of Am.*, 230 F.3d 1215, 1223 (10th Cir. 2000). It refused to "infer that 'settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith.'" *Id.* at 1223–24 (quoting *Kosierowski v. Allstate Ins.*, 51 F. Supp. 2d 583, 592 n.8 (E.D. Pa 1999)); *see also Messer v. Universal Underwriters Ins.*, 598 S.W.3d 578, 590 (Ky. Ct. App. 2019) (adopting the majority rule that reserves do not represent an insurer's "objective assessment of a claims [sic] worth to which an insurer may be held" and rejecting the appellant's argument the carriers acted in bad faith by withholding the reserve amount while the parties followed the policies' arbitration procedure to resolve their dispute and value, or until she executed a release (quoting *Silva*, 47 P.3d at 1190) (alteration in original)); *Voland v. Farmers Ins.*, 943 P.2d 808, 811–12 (Ariz. Ct. App. 1997) (rejecting plaintiff's argument that the UIM insurer acted in bad faith by withholding the amount of its settlement offer while the claim was arbitrated because "the settlement offer was simply a proposal to compromise and resolve the claim, nothing more and nothing less" and not an admission of the minimal amount owed to the plaintiff).

Likewise, courts in South Carolina have found that when an insurance company has a valid defense, it can offer and settle for less than the claim's objective value as long as the offer is reasonable. *See Snyder v. State Farm Mut. Auto Ins.*, 586 F.

Supp. 2d 453, 460–61 (D.S.C. 2010) (finding no bad faith where UIM insurer's settlement offer was reasonable); *Collins v. Auto-Owners Ins. Co.*, 759 F. Supp. 2d 728, 741–42 (D.S.C. 2008) (finding no bad faith for an insurance company offering to settle for less than the claim's value because that offer was reasonable); *Cock-N-Bull Steak House, Inc.*, 321 S.C. at 7, 466 S.E.2d at 730 (ruling against an insurer who had no reasonable basis to deny a claim); *Crossley v. State Farm Mut. Auto. Ins.*, 307 S.C. 354, 360, 415 S.E.2d 393, 397 (1992) (holding there was no bad faith when there were reasonable grounds for the insurer to contest a claim). Thus, under South Carolina law, an insurance company's reserves do not act as an objective valuation of a claim's value and cannot be used to force a UIM carrier to offer to settle for that amount.

Here, USAA had reason to dispute Hood's claims, including five eyewitnesses and a police report showing that Hood's headlights were off. USAA had no duty to disclose its reserves and settlement authority to Hood or to offer $250,000 to settle the UIM action. Thus, under the facts of this case, the trial court did not err in holding as a matter of law that USAA's conduct in mediation did not support a claim for bad faith, and the court of appeals did not err in finding no evidence of bad faith as an alternate sustaining ground.

Hood also argues USAA had no right in the UIM Action to argue Hood's headlights were off. That argument is completely meritless for two related reasons. First, USAA only took one position here. As stated, USAA provided Hood with counsel in the Kuck Action, as required by the insurance policy. That lawyer had a "responsibility to advocate zealously on behalf of [Hood]." *State v. Busse*, 439 S.C. 104, 109, 886 S.E.2d 208, 211 (2023). In the Kuck Action, Hood maintained that she was not at fault because her headlights were on, and she secured expert testimony that her lights were on. USAA, however, was not a party to the Kuck Action. When USAA stepped into Johnson's shoes "for its own benefit" in the UIM Action, it was allowed to contest liability for UIM benefits and argue that Hood was at fault by not having her headlights on. S.C. Code Ann. § 38-77-160; *Williams*, 315 S.C. at 534, 446 S.E.2d at 404. Second, even if we were to agree with Hood that USAA could not in good faith argue during the UIM Action that Hood's lights were not on, Hood conceded during the trial of the UIM Action that her headlights were not on, and she did not call her expert to testify. It would be ludicrous indeed to conclude USAA could not pursue a defense in the UIM Action on a factual point Hood herself conceded. USAA's argument that Hood's lights were off was entirely reasonable under these facts. Hood's argument to the contrary borders on frivolous.

In short, the trial court correctly found that USAA's litigation position in the UIM Action did not support a finding of bad faith because (1) USAA was not a party to the Kuck Action and thus could not have taken a disparate position about Hood's headlights in the UIM Action; (2) USAA was allowed by Section 38-77-160 to contest its liability for UIM benefits; and (3) USAA's argument in the UIM action that Hood's headlights were not on was consistent with Hood's concession during the UIM Action.

Simply put, South Carolina law does not require an insurance company to disclose and offer its full reserves or full authority when it has a valid defense and may defend its interest when stepping into a defendant's shoes under a UIM policy. Thus, we affirm the court of appeals' alternative sustaining grounds.

## III.   Conclusion

Attorneys may have "an obligation to provide zealous representation" to their client, but they also have "a corresponding obligation to opposing parties, the public, [their] profession, the courts, and others to behave in a civilized and professional manner in discharging [their] obligations to [their] client[s]." *In re White*, 391 S.C. 581, 589, 707 S.E.2d 411, 415 (2011). We granted certiorari to say, in the strongest terms, that bringing a meritless claim fails to meet this obligation. We therefore hold that USAA defended the UIM Action in a manner clearly contemplated by statute, and USAA was not obligated to offer Hood the full amount of its reserve, nor was it obligated to offer the full amount of its settlement authority.[5] A negligence action did not lie against USAA, and a bad faith action under these facts was wholly without merit. For the foregoing reasons, the court of appeals' decision is

**AFFIRMED.**

**KITTREDGE, C.J., FEW and HILL, JJ., concur. JAMES, J., concurring in a separate opinion in which KITTREDGE, C.J., concurs.**

---

[5] Again, the reserve and the settlement authority were the same in this case.

**JUSTICE JAMES:** I concur but write separately to comment further on the positions taken by Hood's lawyer throughout this bad faith case. Insurance carriers should be held to account if they act in bad faith, and no carrier should consider the majority opinion or this concurring opinion as a license to play fast and loose with obligations owed to insureds. Here, however, the argument that USAA acted in bad faith is baseless. It is indeed ironic that one of the claims initially pled on Ms. Hood's behalf against USAA was for barratry.

## I.

During oral argument before the court of appeals, Ms. Hood's lawyer argued USAA had no legitimate defense to her UIM claim, even though the jury in the UIM Action found she was 49% at fault. Counsel acknowledged to the court of appeals that the jury's 49% allocation came from Ms. Hood's "stipulation at trial" that she would not contend her headlights were on. Counsel stated the stipulation was "a trial tactic," because "the headlights had to be taken off the table in order for [Ms. Hood's] credibility not to be wrecked." The fear Ms. Hood's credibility might be wrecked obviously arose from the accounts of five eyewitnesses that Ms. Hood's headlights were not on and from evidence that it was dark when the accident occurred. The headlight issue was perfectly teed up for the jury in the UIM Action.[6]

As the court of appeals held and the majority makes clear, USAA had every right to pursue the headlights issue in the UIM Action. I would be shocked had USAA not done so.[7]

---

[6] During oral argument before this Court, Ms. Hood's lawyer argued the critical liability issue during the trial of the UIM Action was not whether Ms. Hood's headlights were on or off, but rather whether headlights were required at the time of day when the wreck occurred. He stated Ms. Hood's position during the trial of the UIM Action was that the accident occurred during "civil twilight," which he contends is a period after sunset when headlights need not be on. South Carolina Code section 56-5-4450 requires a vehicle's headlights to be on one-half hour after sunset and at such other times when "environmental factors severely reduce the ability to clearly discern persons and vehicles on the street or highway at a distance of five hundred feet ahead." The record reflects the accident occurred from twenty-eight to thirty-two minutes after sunset, and witness Lee testified it was dark.

[7] USAA's counsel in the UIM Action testified during the bad faith trial that data

## II.

Ms. Hood's other claim of bad faith stems from the mediation of the UIM Action. It is also groundless. USAA gave Mr. Daniel, its attorney in the UIM Action, mediation authority of $250,000. As the mediation conference drew to a close, Ms. Hood's final firm demand was $600,000, but her attorney advised Mr. Daniel and the mediator that Ms. Hood might consider settling her UIM claim for between $300,000 and $400,000. Mr. Daniel offered $200,000 and advised Ms. Hood's attorney he had no more settlement authority. Mediation ended and USAA made no further offers. During discovery in the bad faith action, Hood's lawyer learned Mr. Daniel's authority (and USAA's reserve) in the UIM Action was $250,000. Then began counsel's refrain that USAA acted in bad faith because Mr. Daniel "lied" about his authority, with counsel for Ms. Hood contending she would have accepted $250,000 had it been offered. The accusation persisted in the bad faith action until the trial court correctly directed a verdict in favor of USAA on the issue.

The accusation resurfaced before the court of appeals, and the court of appeals properly rejected it. Then, four times in Ms. Hood's brief to this Court, her lawyer stated Mr. Daniel lied about his settlement authority. The trust given to an attorney to be a zealous advocate should hardly ever extend to calling opposing counsel a liar. This is especially true when—as here—an experienced lawyer should know the accusation is unfounded. To characterize Mr. Daniel's representation of his authority as a "lie" under these circumstances is inappropriate.

**KITTREDGE, C.J., concurs.**

---

from the "black box" from Ms. Hood's vehicle indicated she was traveling 62 miles per hour at impact. The speed limit was 45 miles per hour. The record is not clear whether the issue of speed was before the jury in the UIM Action.